**In re ASBESTOS LITIGATION (LEE).**

Superior Court of Delaware,
New Castle County.

Submitted: April 2, 1985.
Decided: May 2, 1986.

Thomas C. Crumplar and Douglas B. Canfield of Jacobs and Crumplar, P.A., Wilmington, for plaintiffs.

John A. Elzufon of Elzufon & Bailey, P.A., Wilmington, for Gale Corp.

Richard P.S. Hannum of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for Keene Corp.

Donald A. Herner and Frederic L. Neustadt of Anderson Russell Kill & Olick, P.C., New York City, of counsel, for Keene Corp.

POPPITI, Judge.

This is a decision on Gale Corporation's Motion for Summary Judgment in the above listed cases. Gale Corporation, relying on the principles of *res judicata* and collateral estoppel, asserts that it should not be a party to this litigation because it is only named as a party as a possible successor corporation to Baldwin-Ehret-Hill, Inc. or Keene Building Products Corporation, an issue already decided in previous litigation in other jurisdictions.

In ruling on this question the Court must necessarily examine the corporate history of Keene Corporation. In this regard, the Court is satisfied that the following facts are undisputed. Further it should be noted that in no small part I have relied on the development of facts regarding this corporate history in the cases of *Chapin v. Celo-*

*tex Corp.*, D. Miss., C.A. No. S79–0272(N), Nixon, J. (Jan. 30, 1984); *Myers v. Keene Corp.*, D.Pa., C.A. No. 82–3922, Weiner, J. (Aug. 21, 1985); *Logan v. Hercules, Inc.*, Miss. Circ. Ct., C.A. No. 30917, Saunders, J. (July 9, 1984).

The Ehret Magnesia Manufacturing Company ("Ehret") was incorporated under the laws of the Commonwealth of Pennsylvania on December 24, 1897. Up through July 31, 1959 Ehret (or the company under different corporate names) continuously manufactured and distributed asbestos containing thermal insulation products. It also at various times operated contracting units which installed asbestos containing products at various job sites.

Baldwin—Hill Company ("B–H") was incorporated under the laws of the State of New Jersey on January 24, 1935. Through July 31, 1959, B–H also engaged in the business of the manufacture and distribution of asbestos containing thermal insulation products.

On July 31, 1959 Ehret and B–H merged to form Baldwin-Ehret-Hill, Inc. ("BEH"). After the merger the two companies ceased to operate under their former corporate names. In 1964 BEH acquired the contracting units of Mundet Cork Company which resulted in the expansion of BEH's geographical base where it could sell and install asbestos containing thermal insulation products.

In 1967 Keene Corporation ("Keene") was formed as a holding company and in 1968 acquired between 97 and 99 percent of BEH outstanding shares. As a result of this transaction Keene acquired all of the assets and liabilities of BEH relating to BEH's asbestos operations.

In order to acquire 100 percent of the shares of BEH, Keene created a subsidiary under the laws of the Commonwealth of Pennsylvania called Keene Baldwin Ehret Hill ("KBEH"). BEH was then merged into KBEH and the emergent corporation was named Baldwin Ehret-Hill ("BEH II"). As a result of this transaction, Keene acquired and held 100 percent of the shares of BEH and operated BEH II as a subsidiary corporation.

In late December 1969 or early January 1970 Keene decided to incorporate all of its subsidiaries in the State of Delaware. In this regard Keene formed Keene Building Products Corporation ("KBPC") in 1970 in Delaware. In the same year BEH II was merged into KBPC. As a result of this transaction KBPC assumed responsibility for all liabilities previously incurred by BEH II. KBPC manufactured distributed and installed asbestos containing thermal products.

Keene elected its own officers to the various boards of directors of BEH, BEH II and KBPC. Additionally other officers of Keene became operating officers of these companies.

Between 1969 and 1973 Keene prepared consolidated corporate income tax returns and consolidated financial statements which included when applicable the operations of BEH, BEH II and KBPC. Keene also purchased liability insurance covering all of its operating subsidiaries which included BEH, BEH II and KBPC.

In 1974, Keene decided to sell the Noise Control Products Division of KBPC to Gale Corporation ("Gale"). In accomplishment of this sale, KBPC contributed to Keene all of its assets and liabilities of every kind and nature excepting only those assets and liabilities related to the Noise Control Division.

Keene sold the stock of KBPC to Building Products Corp. ("BPC"), a shell corporation formed by Keene to acquire stock of KBPC. In conjunction with the sale of the stock, Keene agreed that it would hold BPC harmless from any and all claims, liabilities and expenses of any nature whatsoever which might arise out of or in connection with those businesses other than the Noise Control Division, the only remaining asset of KBPC. Keene also agreed by corporate resolutions affecting the stock sale that it would assume the defense of claims and expenses relating to

certain suits, some of which were listed as asbestos cases. After Keene completed this transaction, KBPC which now consisted only of the Noise Control Division was sold by BPC to Gale.

Gale never manufactured, sold or installed any thermal products containing asbestos. There are no corporate documents which would suggest that Gale assumed any obligation of KBPC other than that connected with the Noise Control Division.

Both Gale and Keene were named defendants in asbestos litigation occurring in the Circuit Court of the First Judicial District of Hinds County, Mississippi. Robert Logan and Genevie Logan and Nevin Shewbrooks and Anna Mae Shewbrooks who are Delaware plaintiffs in the asbestos cases of *Logan v. AC and S, Inc.*, C.A. No. 82C–DE–102, and *Shewbrooks v. AC and S, Inc.*, C.A. No. 82C–AP–98, were plaintiffs in Mississippi. On July 9, 1984, the Mississippi Circuit Court issued virtually identical opinions granting Gale's Motion for Summary Judgment holding as a matter of law that Keene and not Gale was the corporate successor to KBPC and dismissing Gale from the case. *See Logan v. Hercules, Inc.*, Miss. Circ. Ct., C.A. No. 30917, Saunders, J. (July 9, 1984); *Shewbrooks v. A.C. and S., Inc.*, Miss. Circ. Ct., C.A. No. 30815, Saunders, J. (July 9, 1984). Regarding the question of successor liability the Mississippi Court stated in each case in pertinent part as follows:

> It is the opinion of the Court that Gale Corporation did not assume the obligations, including tort liability, of KBPC when it purchased the Noise Control Division as evidenced by the agreements and resolutions made at the time of the contribution of the assets and liabilities of KBPC upward to its parent Corporation, Keene Corporation.
>
> As a general rule in asset transactions, the transferee is not liable for obligations of the transferor. An exception to the rule exists, however, in the case where there has been an express or implied assumption of liabilities. [citations omitted]. In the Keene Board of Directors' resolution, it is agreed that Keene "... accept the transfer of all assets and assume all the liabilities of Keene Building Products Corporation."
>
> Keene is, therefore, a corporate successor of Baldwin-Ehert-Hill (sic) and KBPC.

*Logan* at 3–4; *Shewbrooks* at 3–4.

The decisions of the Court pursuant to local practice became final for lack of any appeal on August 16, 1984.

■ The question becomes are the opinions and orders of the Mississippi court with reference to the Delaware plaintiffs who were also Mississippi plaintiffs *res judicata* in the Delaware litigation regarding the issue of Keene/Gale successor liability? I am satisfied that the answer must be in the affirmative.

The applicability of the doctrine of *res judicata* is determined by the application of a five-pronged test articulated in *Epstein v. Chatham Park, Inc.*, Del. Super., 153 A.2d 180 (1959) by then Justice Wolcott, later Chief Justice, which requires that:

> A. The original court must have had jurisdiction of the subject matter of the suit and of the parties to it;
> B. The parties to the original action were the same as the parties, or their privies, in the case at bar;
> C. The cause of action in the original action was the same as in the case at bar, or the issues necessarily decided in the prior action were the same as those raised in the case at bar;
> D. The issues in the prior action were decided adversely to the contentions of the plaintiffs in the case at bar; and
> E. The decree rendered in the prior action is a final decree.

■ An examination of the five-pronged test requires that I make one observation. Plaintiffs do not present any record which would suggest that these prongs have not been met. Indeed plaintiffs' reference to facts that were not specifically mentioned

in the opinion of the Court is of no moment since the bar of *res judicata* applies to all issues that were actually decided and extends to issues which might have been raised and decided in the first litigation. *See Foltz v. Pullman, Inc.*, Del. Super., 319 A.2d 38, 40 (1974). Further, plaintiffs' reference to an agreement dated May 25, 1982 between the presidents of Keene and Gale purportedly being a settlement of a suit in which Keene sued Gale on a note is not relevant to the instant application. In this regard I am mindful of the language in the May 25th document which states as follows:

> ... Gale hereby indemnifies Keene and shall hold Keene harmless against any liability arising out of the lawsuits alleging injury resulting from exposure to products containing asbestos alleged to have been manufactured by Keene Building Products Corporation or its corporate predecessors provided further that the aforementioned indemnification, shall be limited in an amount to such sum as shall be payable by Gale's insurance carriers.

While plaintiffs make no argument as to how this document would have a bearing on the application of the principle of *res judicata*, plaintiffs do assert that it creates an issue of fact having some relevance to the question of successor liability. I must confess that I find no such relationship. The purported hold harmless agreement between Keene and Gale is a matter that must concern only Keene and Gale. I am satisfied that even were I to decide the issue afresh in this litigation, the issue of successor liability and the factors to be considered in conjunction therewith surround the 1974 sale of the Noise Control Products Division of KBPC to Gale. Factors surrounding a 1982 settlement and hold harmless agreement may have some impact on who defends the litigant and ultimately who pays for any successful claims, but I am satisfied these factors do not have any bearing on the threshold issue of successor liability.

Having stated the above, the Court is satisfied that Gale's Motion for Summary Judgment should be and is hereby granted in both *Logan v. AC and S, Inc.*, C.A. No. 82C–DE–102, as to Robert and Genevie Logan and in *Shewbrooks v. AC and S, Inc.*, C.A. No. 82C–AP–98, as to Nevin Shewbrooks and Anna Mae Shewbrooks.

■ I now turn to the remaining cases involving Keene and Gale in the Delaware litigation. The issue as to these cases is not one of *res judicata*, but rather one of collateral estoppel, sometimes called "issue preclusion."

In this jurisdiction, it is settled law that "a judgment in a prior suit ... precludes in a subsequent suit on a different cause of action the relitigation of a factual issue which was litigated and decided in the prior suit between the same parties or persons in privity with them." *Foltz*, 319 A.2d at 40; *See* Restatement (Second) of Judgments §§ 27, 38 (1982). Keene and Gale have litigated the successor liability issue not only in the two Mississippi cases already mentioned, but also in *Chapin v. Celotex Corp.*, D. Miss., C.A. No. 579–0272(N), Nixon, J. (Jan. 30, 1984) and *Myers v. Keene Corp.*, D.Pa., C.A. No. 82–3922, Weiner, J. (Aug. 21, 1985). All four cases, from three different courts, looking at the same facts as presented here, reach the conclusion that Keene, and not Gale, is the successor corporation to BEH and KBPC. The same issue is involved in the Delaware cases. The same fact pattern revolving around the 1974 sale of the Noise Control Products Division of KBPC to Gale is presented. Judicial economy, the public policy behind collateral estoppel, dictates that the issue not be decided afresh here. As between Keene and Gale, Keene is estopped from denying that it is the successor corporation to BEH and KBPC.*

---

* In its Memorandum of Law in Response to Gale's Motion for Summary Judgment, Keene asserts that the sole issue before this Court is whether Gale is the successor to KBPC or BEH, and that to reach its decision the Court need not decide whether Keene "or some other party" is

The remaining plaintiffs here admit that if Keene were to be found to be the successor corporation, then Gale should be dismissed from the litigation. These plaintiffs, however, were not parties to the litigation where the Keene-Gale issue was previously decided. Thus *res judicata* would not apply to them. Delaware law does allow collateral estoppel to preclude litigation of an issue in a subsequent suit between different parties. *Neoplan USA Corp. v. Taylor*, D. Del., 604 F.Supp. 1540, 1546 (1985). "[W]hen an issue of fact which was necessary to the outcome of a valid prior judgment has been fully litigated, it may not be reargued by a party to that prior proceeding." *Chrysler Corp. v. New Castle County*, Del. Super., 464 A.2d 75, 80 (1983); *see* Restatement (Second) of Judgments § 29 (1982). Thus, unless there are factors to suggest that a party to a prior action did not have a full and fair opportunity to litigate the issue in the first action or that differing circumstances justify allowing an opportunity to relitigate, that party may be estopped from rearguing an issue of fact already decided. *See Chrysler Corp.*, 464 A.2d at 82.

The plaintiffs, however, have not clearly indicated their intention to assert collateral estoppel against Keene. Gale cannot assert it for them. Likewise, because plaintiffs were not parties to the prior litigation, Gale cannot collaterally estop the plaintiffs. The end result is that the doctrines of *res judicata* and collateral estoppel do not preclude the plaintiffs, not parties to the prior litigation, from their chance to litigate the issue. *See Foltz*, 319 A.2d at 41–42.

Until and unless the plaintiffs decide to assert collateral estoppel against Keene, this Court cannot dismiss Gale Corporation despite this Court's belief that Gale shall prevail at trial. Gale requested summary judgment based on *res judicata* and collateral estoppel and not on the facts of the situation. Other than the two cases mentioned earlier, summary judgment cannot be given on these grounds. Regretfully, Gale's Motion as to the remaining plaintiffs is HEREBY DENIED.

IT IS SO ORDERED.

the successor. Gale's opening brief makes it clear that Gale is relying on the doctrines of *res judicata* and collateral estoppel in its motion. To apply these doctrines requires the Court to adopt the results of the four prior decisions which clearly held that Keene is the successor to BEH and KBPC. Thus, to reach a decision as to Gale on these bases requires a decision as to Keene.

In a footnote to their Memorandum, Keene states that "[if] this Court believes that a determination by Keene's status, *vis-a-vis* KBPC, is necessary in order to resolve Gale's motion, Keene respectfully requests leave to file a supplemental memorandum of law in order to fully address the successor liability issue as to Keene." First, the issue, as clearly spelled out in Gale's opening brief, is not successor liability *per se*, but rather the effect of *res judicata* and collateral estoppel on this litigation. It is to this point that Keene's memorandum should have been addressed. Secondly, it is not the policy of this Court to contact counsel during the decision-making process to inform him that it is planning to rule against his client and that, therefore, more arguments should be provided. Keene had ample opportunity to respond to Gale's contentions in their responding memorandum.