PLAYTEX FAMILY PRODUCTS, INC., a Delaware corporation, and International Playtex, Inc., a dissolved Delaware Corporation, Plaintiffs,

v.

ST. PAUL SURPLUS LINES INSURANCE COMPANY, National Union Fire Insurance Company, International Insurance Company, Granite State Insurance Company and AIU Insurance Company, Defendants.

Civ. A. Nos. 88C–FE–166, 88C–JN–156.

Superior Court of Delaware,
New Castle County.

Submitted: Jan. 27, 1989.
Decided: April 13, 1989.

Walter L. Pepperman, II, and James Lawless, IV, Morris, Nichols, Arsht & Tunnell, Wilmington, and William J. McSherry, Jr., Bryan, Cave, McPheeters & McRoberts, New York City, for plaintiffs.

Wayne N. Elliott, Vernon R. Proctor, and Philip B. Obbard, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington and Thomas P. Kane, Edward M. Laine, and Bethany K. Culp, Oppenheimer, Wolff & Donnelly, St. Paul, Minn., for defendants.

## OPINION

CHANDLER, Vice-Chancellor.*

These consolidated cases arise from a disagreement over the meaning of a one sentence paragraph that appears in several insurance contracts. The plaintiffs, major corporate citizens of Delaware, are the subsidiary and the successor to the subsidiary of Esmark, Inc., an Illinois corporation which served as a holding company for a large number of manufacturing firms. The defendants were excess liability insurers for Esmark and its subsidiaries.

Before the Court is a deceptively simple issue: whether coverage is available under certain insurance contracts for punitive damages awarded against the plaintiffs. The contracts involved were "follow form" excess insurance policies which incorporated the terms of a policy of insurance provided by Mission National Insurance Co. ("Mission"). Regarding punitive damages, the Mission policy provided at general condition "S" that:

> "It is the intention of the company and the named insured that punitive and exemplary damages be fully insured to the maximum extent permitted by law subject to the limits of liability ..." of the policy.

During the policy years in question here (1982–83 and 1983–84), the plaintiffs produced, among other products, tampons. Numerous claims have been made against the plaintiffs by tampon users who have developed toxic shock syndrome. Some of these claims involved or may involve punitive damages claims. In one claim, suit has resulted in a punitive damages award of $10,000,000 together with interest. *O'Gilvie v. International Playtex, Inc.*, Kan. Dist.Ct., 609 F.Supp. 817 (1985) *rev'd*, 821 F.2d 1438 (1987), *cert. denied*, — U.S. ——, 108 S.Ct. 2014, 100 L.Ed.2d 601 (1988) (the *"O'Gilvie* decision"). With respect to the *O'Gilvie* punitive damages award, which involved a Kansas resident who pur-

chased and used one of plaintiffs' tampons in Kansas and as a result contracted toxic shock syndrome and died, the insurers denied liability under condition "S" of the Mission policy. Their position was that Kansas law, which prohibits the insurability of punitive damages, applied to relieve the insurers of any liability for punitive damages under the policy. On February 11, 1988, two of the insurers filed suit in Kansas seeking, among other things, a declaratory judgment that Kansas law applied to the *O'Gilvie* decision and that no insurance coverage was available for the award of punitive damages in that case.[1]

On February 22, 1988, plaintiffs brought this declaratory judgment action seeking insurance benefits for the punitive damages awarded in *O'Gilvie* and a judicial declaration that Delaware law applies to general condition "S". Delaware law permits insurance for punitive damages awards. *Whalen v. On Deck, Inc.*, Del. Supr., 514 A.2d 1072 (1986).

On June 2, 1988, the Kansas District Court ("the Kansas court") granted partial summary judgment to the insurers, finding that Kansas law applied and holding that no insurance coverage was available for punitive damages in the *O'Gilvie* case. *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, Kan.Dist.Ct., Case No. 88 C 463, Journal Entry of Partial Summary Judgment, Klein, J. (June 2, 1988). This decision is currently on appeal to the Kansas Supreme Court.

Plaintiffs have amended their complaint in this action and consolidated it with a related suit filed on June 22, 1988. In its present incarnation, plaintiffs seek:

1. A declaration that plaintiff Playtex Family Products is an insured under all of the insurance policies involved in this action;

2. A declaration that Delaware law applies to the contracts at issue with respect to all claims arising from toxic shock syndrome, and therefore that defendants are

---

* Specially assigned to Superior Court under Del. Const. art. IV, § 13(2), by Order of the Chief Justice dated April 5, 1989.

1. All defendants subsequently joined the Kansas suit. The insurers also brought a similar declaratory judgment action in Minnesota, but that action has apparently been stayed.

obligated to provide coverage for punitive damage judgments together with interest and expenses.

3. Reimbursement for the payment of the award in *O'Gilvie*, together with interest.

This opinion addresses the insurers' motion to dismiss based on *res judicata*, lack of ripeness and failure to join indispensable parties. *See* Superior Court Civil Rule 12(c).

## I. *Res Judicata*

The Kansas trial court found that:

"This court concludes that Kansas law should apply to determine the outcome of this dispute. It is a clearly expressed public policy of the State of Kansas that punitive damages for direct liability cannot be insured against. The punitive damages award in the *O'Gilvie* action was not based upon vicarious liability. So, even under Kansas law enacted after the action giving rise to the award in the *O'Gilvie* decision, defendants could not recover their punitive damages from plaintiffs. This controversy arises out of injuries in Kansas suffered by a Kansas resident resulting in her wrongful death. Providing for the award of punitive damages in civil actions is a significant method by which a state protects its citizens. This State's interest in protecting its citizens and its duty to protect its citizens is of the highest order. This interest would be undermined if Kansas law were not applied to the question presented in this action....

It is against the public policy of the State of Kansas to allow the defendants to pass on the cost of a punitive damages award based on International Playex Incorporated's direct liability to the plaintiffs [in the *O'Gilvie* action]. Therefore, plaintiffs are entitled to the relief requested ... that they are not obligated to indemnify the defendants for the punitive damages award which was assessed by a Kansas jury against International Playtex, Incorporated.... This court accordingly declares that plaintiffs are not obligated to indemnify International Playtex, Inc., for the punitive damages award in the *O'Gilvie* action.... This court expressly determines that there is no just reason for delay in entering a final judgment as set forth above and hereby expressly directs entry of final judgment as such."

Defendants here (plaintiffs in the Kansas action), seek to impose the bar of *res judicata* to those portions of plaintiffs' action concerning the insurability of the punitive damages award in the *O'Gilvie* case.

■ The Courts of this state have long recognized the utility of the *res judicata* doctrine in terms of judicial economy and fairness to litigants:

"The doctrine of *res judicata* is common to all civilized systems of jurisprudence, and is based upon the salutary concept that the solemn decisions of a competent court upon a disputed set of facts should forever set the controversy at rest ... the doctrine of res judicata, briefly stated, is that a decision of a court of competent jurisdiction may, in the absence of fraud and collusion, be raised as an absolute bar to the maintenance of a second suit in a different court upon the same matter by the same party, or his privies." *Epstein v. Chatham Park, Inc.*, Del.Super., 153 A.2d 180, 184 (1959).

The Court in *Chatham Park* set out five requisites which must be met before the bar of *res judicata* is applied:

1. The court making the prior adjudication must have had jurisdiction over the subject matter of the suit and of the parties to it.

2. The parties to the prior action were the same as the parties, or their privies, in the pending case.

3. The prior cause of action was the same as that in the present case, or the issues necessarily decided in the prior action were the same as those raised in the pending case.

4. The issues in the prior action were decided adversely to the contentions of the plaintiffs in the pending case.

5. The prior decree is a final decree.

*Epstein v. Chatham Park, Inc., supra; In re Asbestos Litigation,* Del.Super., 517 A.2d 288, 291 (1986).

It is undisputed that requisites numbers 2 through 5 are met with respect to that portion of the plaintiffs' action that deals with punitive damages awarded in the *O'Gilvie* case.[2] The plaintiffs here have argued at great length that the opinion of the Kansas court was erroneous on numerous grounds, and that the principles of *res judicata* and full faith and credit require a *de novo* review by this Court of the matter decided by the Kansas court before the bar is applied. If this were the case, however, the doctrine of *res judicata* would be little more than a fiction. Under plaintiffs' scheme the trial level court of state number 2 (Delaware) would sit as an appellate court on the decision of the trial level (or higher) court of state number 1 (Kansas). If state 2's court decided that state 1's had applied the law erroneously, it would be free to set aside the decision and apply its own. If state 2's court agreed with state 1's, the plaintiff would theoretically then be free to raise the same argument before the courts of state 3, or 6, or 10. It is precisely this chain of never-ending litigation that the doctrine of *res judicata* is designed to prevent. *Epstein v. Chatham Park, supra.* Those issues pertaining to the correctness of the judgment of the Kansas court are currently on appeal before the Kansas Supreme Court. It is from that body, rather than here, that plaintiffs' relief, if any, from the substantive portions of the Kansas judgment must come.

Moreover, the "full faith and credit" clause of the Federal Constitution does not mandate a *de novo* review of the substantive decisions of the Kansas Court. U.S. Const. Art. IV, § 1. "The constitutional command of full faith and credit, as implemented by Congress, requires that judicial proceedings shall have the same full faith and credit in every court in the United States as they have by law or usage in the courts of the states from which they are taken. Full faith and credit thus generally requires every state to give a judgment at least the *res judicata* effect which the judgment would be accorded in the state which rendered it." *Durfee v. Duke,* 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186 (1963). Nothing in the full faith and credit clause requires this state to expand its judicial analysis beyond that announced in *Epstein v. Chatham Park, supra. See Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Assoc.,* 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982); *Durfee v. Duke, supra; Milliken v. Meyer,* 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1941).

The plaintiffs argue that the full faith and credit clause requires me to review the substantive decisions of constitutional law made by the Kansas court. In support of this proposition they cite *Griffin v. Griffin,* 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946). That case involved an attempt to enforce a judgment of the New York Supreme Court in the District Court in the District of Columbia. The full faith and credit analysis of the Supreme Court did *not* implicate the substantive decisions of the New York court, however. It involved whether notice was given the petitioner of the New York action, and thus whether the New York court had jurisdiction over him:

> "[T]o the extent that petitioner was thus deprived of an opportunity to raise defenses otherwise open to him under the law of New York ... there was a want of judicial due process, and hence want of that jurisdiction over the person of the petitioner prerequisite to the rendition of a judgment *in personam* against him." 327 U.S. at 228, 66 S.Ct. at 560.

---

**2.** Factor 5, that the prior decree be final, appears to be met here. An entry of summary judgment is final under Kansas law. *Gideon v. Bo–Mar Homes, Inc.,* 205 Kan. 321, 469 P.2d 272 (Kan. 1970). Moreover, the Courts of this state have indicated that the better view is that judgments on appeal are final for *res judicata* purposes. *Maldonado v. Flynn,* Del.Ch., 417 A.2d 378 (1980). This is clearly so, else the incentive would be for the losing party in a suit to simultaneously appeal and file suit in another jurisdiction, hoping for an inconsistent verdict. (*See Restatement, Judgments, 2d.* § 13, Comment F.) At any rate, plaintiffs have not argued that the judgment is not final for *res judicata* purposes.

Since the judgment was a nullity in New York, it could not be enforced in the District of Columbia. *Griffin*, therefore, stands for the proposition that a decision purportedly rendered by a court without jurisdiction is void, and thus not the basis for *res judicata* or full faith and credit. *See also Hanson v. Denkla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (lack of jurisdiction made decision of Florida court a nullity, not entitled to the faith and credit in a Delaware court).

█ This leaves, then, factor 1: whether the Kansas court had jurisdiction over the subject matter and persons involved. Before the doctrine of *res judicata* can be applied, this Court must determine whether the Kansas court had jurisdiction. *Epstein v. Chatham Park, Inc., supra; In re Asbestos Litigation, supra.* This must be so, of course, since in the absence of jurisdiction on the part of the Kansas court, no effective decision can have been rendered by that court which can justify the imposition of *res judicata* by this Court. Any such decision by the Kansas court would be, in effect, a nullity. Looked at another way, in the absence of jurisdiction a court cannot render a valid decision, and prerequisite to the application of *res judicata* is a valid and final judgment. *Restatement, Judgments*, 2d, § 1.

The underpinnings of the jurisdiction exercised by the Kansas court are found in § 60-308(b)(1) of Kansas Statutes Annotated, which provides that:

"Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of the acts: (1) transacts any business within this state; ...."

Plaintiffs argue vigorously that this Court should find that the exercise of jurisdiction by the Kansas court did not comply with the terms of § 60-308(b)(1) (the Kansas "longarm statute") and was in violation of the Federal Constitution. Defendants just as vigorously argue that the exercise of jurisdiction was proper. Even with respect to jurisdiction, however, full faith and credit requires that the findings of the Kansas court be respected "when the second court's inquiry discloses that [jurisdictional] questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." *Underwriters National Ins. Co. v. North Carolina Life & Accident Health Ins. Gty, supra,* 455 U.S. at 706, 102 S.Ct. at 1366; *Durfee v. Duke, supra.* Before beginning such an inquiry, however, I note that this precise issue has also been appealed by the plaintiffs here to the Supreme Court of Kansas. If I were to rule on the propriety of a Kansas trial judge's application of the Kansas longarm statute, can it seriously be argued that my decision should bind the Kansas Supreme Court currently hearing the same matter? If not, and if the Kansas Supreme Court subsequently issues an inconsistent decision, which decision should be controlling? Between the two courts, both presented with this issue, it is more prudent, in my opinion, that the decision as to the validity of the exercise of jurisdiction by the Kansas trial court on authority of the Kansas longarm statute be made by the Kansas Supreme Court. Therefore, this Court's decision on that portion of defendant's motion concerning the *res judicata* effects of the Kansas decision involving insurance coverage for the punitive damages award in the *O'Gilvie* case should be stayed until the Kansas Supreme Court decides the jurisdictional issue.[3]

---

3. Plaintiffs argue that, even if the Kansas decision is *res judicata* on the issue of defendants' liability for the amount of the punitive damages themselves, it leaves unresolved the issue of whether interest on those damages, which accrued during the appeal, is covered under the policy. Since the defendants' liability for the interest is linked to their liability for the underlying punitive damages, and since that question is stayed pending the resolution of the jurisdictional issues in the Kansas Supreme Court, the principles of judicial economy and comity dictate that I not consider the issue of liability for interest at present. Accordingly, this issue also shall be stayed pending the outcome of the appeal to the Kansas Supreme Court.

Given the fact that, should the Kansas Supreme Court decide that the Kansas trial court had no jurisdiction, the Kansas decision will be a nullity, a stay does no violence to the full faith and credit clause. The issue being the validity of a purported exercise of jurisdiction under a Kansas statute by a Kansas court, it is entirely appropriate as a matter of comity and judicial economy that the stay be entered pending resolution of the jurisdictional issue by the Kansas Supreme Court. *McWane Cast Iron Corp. v. McDowell Wellman Engineering Co.*, Del.Supr., 263 A.2d 281 (1970).

Finally, plaintiffs claim that the Kansas decision should not have *res judicata* effect because punitive damages are effectively penal in nature and the full faith and credit clause does not require that a state enforce a foreign penal judgment.[4] *Huntington v. Attrill*, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892). This argument has no merit. In the first instance, this Court is not asked to *enforce* a penal judgment. It is called upon to determine whether a Kansas decision that Kansas law should apply to a clause in an insurance contract dealing with punitive damages is *res judicata* with respect to the same issue in this Court. Second, even if full faith and credit should not *require* this Court to give effect to the Kansas judgment, nothing prevents this Court from applying its own doctrine of *res judicata* to that decision. *Epstein v. Chatham Park, supra.*

## II. *Ripeness*

I turn now to defendants' motion to dismiss the portions of plaintiffs' complaints not connected with the decision in *O'Gilvie*. Plaintiffs seek a declaration from this Court that Delaware law applies to general condition "S", at least insofar as toxic shock syndrome cases are concerned, for the policy years 1982–83 and 1983–84. The result they seek is that insurance coverage be available for punitive damages assessed as a result of toxic shock syndrome arising from the use of plaintiffs' products in any situation and jurisdiction whatsoever, together with related expenses and interest. The defendants point out that, other than the award in *O'Gilvie*, no punitive damages award has been made against plaintiffs in a toxic shock syndrome case. Without such an award, say defendants, there is no obligation on the part of defendants to pay under the insurance policies. Thus, they argue that there is no "actual controversy" presented to the Court and plaintiffs' declaratory judgment claim must fail for lack of ripeness.

The first Declaratory Judgment Act was enacted in this state in 1935. Its purpose was remedial—to accelerate the time at which suit could be brought and a judgment received, in order that a litigant need not await actual harm to him before his cause of action ripened.[5] *Stabler v. Ramsay*, Del.Supr., 88 A.2d 546 (1952). *See Bank of Del. v. Allstate Ins. Co.*, Del.Super., 448 A.2d 231 (1982). At the same time, some restraint on the Court's jurisdiction over inchoate claims was needed. Without such a restriction judicial resources would be wasted on hypothetical or moot cases, or on situations where a judicial declaration would not end the controversy between the parties. *See Heathergreen Commons Condo. Ass'n v. Paul*, Del.Ch., 503 A.2d 636 (1985). In addition, in our legal culture courts have a role in creating (or "finding") the law. Courts are limited to acting in an incremental, fact-driven manner in this regard, however. Producing judicial declarations not related to an actual controversy would disrupt this orderly development of law. *Schick, Inc. v. ACTWU*, Del.Ch., 533 A.2d 1235 (1987) *citing* 13A Wright & Miller & Kane, *Federal Practice & Procedure*, § 3532 (1982).

---

4. This Court need not decide, as plaintiffs ask it to do, whether a judgment for punitive damages itself *is* penal or quasi-penal, and thus not entitled to full faith and credit. I note, however, that under the test provided in the case cited by plaintiff, *Huntington v. Attrill*, such a judgment would *not* be penal, as it assesses a penalty for the benefit of the person aggrieved, rather than the state at large. 146 U.S. 657, 13 S.Ct. 224 (1892), *citing* Blackstone, 3 *BL.Comm.2d.*

5. See the very lucid discussion of the history and purpose of the Delaware Declaratory Judgment Act in *Schick, Inc. v. ACTWU*, Del.Ch., 533 A.2d 1235 (1987).

The Delaware Declaratory Judgment Act, as it existed prior to 1983, contained an explicit requirement that the court act only when presented with an "actual controversy".[6] 10 Del.C. § 6501. *See Rollins International, Inc. v. International Hydronics Corp.*, Del.Supr., 303 A.2d 660 (1973); *Marshall v. Hill*, Del.Super., 93 A.2d 524 (1952). The current version of the Act was adopted from the Uniform Declaratory Judgment Act. It was enacted not to change the substantive law of declaratory judgments, but to give the courts of this state the benefit of the case law of the majority of jurisdictions which have also adopted the Uniform Declaratory Judgment Act. 10 Del.C. §§ 6501 *et seq.; Schick, Inc. v. ACTWU, supra.* While the current Act does not explicitly require an "actual controversy" for this Court to have jurisdiction over a declaratory matter, it is clear from a perusal of the case law as well as the policy of our judicial system that such a requirement is embodied within the declaratory judgment acts of those states following the Uniform Act as well as in the Federal Declaratory Judgment Act.[7] *See, e.g., Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) (applying Federal Declaratory Judgment Act); *Nash v. City of Houston Civic Center*, C.A. 5, 800 F.2d 491 (1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 1996, 100 L.Ed.2d 227 (1988) (applying Federal Declaratory Judgment Act); *Tintera v. Planned Industrial Expansion Auth.*, Mo.Supr., 459 S.W.2d 356 (1970); *Firemens' Insurance Co. v. Burch*, Tex.Supr., 442 S.W.2d 331 (1969); *Klein v. Ronstadt*, 149 Ariz. 123, 716 P.2d 1060 (1986); *Township of Burlington v. Middle Dept., Inspection Agency, Inc.*, 175 N.J.Super. 624, 421 A.2d 616 (1980).[8]

■ Accordingly, I agree with the parties that in order for a controversy to warrant declaratory relief by this Court it must meet the following prerequisites set forth in *Marshall v. Hill, supra:* (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial declaration. 93 A.2d at 525.

■ It is the fourth requisite, ripeness, which defendants assert is not met in this dispute. In deciding whether an issue is ripe for adjudication, I must balance between the competing judicial interests mentioned: the first, embodied in the Declaratory Judgment Act, calling for an early resolution of controversy; and second, those of judicial economy and legal stability which augur for restraint. It is because this Court is required to weigh these interests based on the facts of each case which comes before it that the availability of a declaratory remedy necessarily involves the exercise of judicial discretion. *See Schick, Inc. v. ACTWU, supra,* at 1238, fn. 2, and the cases cited therein. The *Schick* Court identified as among the factors to be considered in the ripeness analysis: (1) A practical evaluation of the legitimate interests of the plaintiff in a prompt resolution of the question presented; (2) the hardship that further delay may threaten; (3) the prospect of future factual development that might affect the determination made; (4) the need to conserve scarce resources; and (5) a due respect for identifiable poli-

---

**6.** "In cases of actual controversy, ... the Superior Court ... may declare rights and other legal relations of any interested parties petitioning for such declaration, whether or not further relief is or could be prayed...." 10 *Del.C.* § 6501.

**7.** *And see* 10 *Del.C.* § 6506, which provides: "Discretionary relief. The court may refuse to render or enter a declaratory judgment or

decree where such judgment or decree, if rendered or entered, will not terminate the uncertainty or controversy giving rise to the proceeding."

**8.** The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, specifically requires an "actual controversy", as does Article III of the Federal Constitution (the "case or controversy" clause).

cies of law touching upon the subject matter in dispute. *Cf. Bank of Del. v. Allstate Ins. Co., supra.*

Here, as defendants point out, there is no present obligation on their part to pay benefits under the policies with respect to an award of punitive damages. This alone is not necessarily fatal to a declaratory judgment action, however. *Harleysville Mutual Cas. Ins. Co. v. Carroll*, Del.Super., 123 A.2d 128 (1956). The question I am presented with is whether the facts of the situation are sufficiently developed to allow me to render a declaratory judgment that will lay the matter to rest. If, on the other hand, in the course of adjudicating this matter I would be forced to construct hypothetical factual situations on which I could then rule, this matter is not ripe for judication. *Rollins International, Inc. v. International Hydronics Corp., supra; Bank of Delaware v. Allstate Ins. Co.*, Del.Super., 448 A.2d 231 (1982); *see* 10 *Del.C.* § 6506.

Suits seeking punitive damages for toxic shock syndrome from plaintiffs have apparently been filed in a number of jurisdictions, including several where public policy disallows the insurability of such damages. It is unclear whether more such suits will be filed in these or other jurisdictions.[9] The declaration sought from this Court is one of a choice of law: that Delaware law is in all situations applicable to general condition "S" of the insurance contracts. The approach of the Kansas court in *O'Gilvie* was that, at least with respect to the punitive damages award in that particular case, the jurisdiction where the injury occurred had the greatest interest, and therefore that its law should apply to general condition "S", negating coverage. Applying such an analysis to this situation, of course, would require me to hypothesize a factual situation for each potential jurisdiction and then examine the public policy of

the jurisdiction with respect to that situation. If this is the approach which must be used, it is obvious that the matter is unripe and should be dismissed.

Plaintiffs argue, however, that the Kansas court was in error, and that the interest in or contact with the contract clause in question of the jurisdiction where the injury occurred will in all cases be negligible. If this is the case the factors which the Court would examine in a choice of law analysis would be the same in every situation, and thus the matter would be ripe for judgment. In evaluating this argument, then, I must necessarily examine which factors would affect this Court's choice of law analysis.

The courts of Delaware have adopted the choice of law approach of the Second Restatement.[10] *Oliver B. Cannon & Son, Inc. v. Dorr–Oliver, Inc.*, Del.Supr., 394 A.2d 1160 (1978). *See* Restatement 2d, *Conflict of Laws*. In the absence of an effective choice of law by the parties, § 188 of the Restatement provides that "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." Those principles include: "(a) The needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying that particular field of law, (f) certainty, predictability and uniformity of result and (g) ease in the determination and application of the law to be applied." Restatement 2d, *Conflict of Laws*, §§ 6, 188. Section 188 directs the Court, in evaluating those principles, to pay particular attention to (a) the place of con-

---

9. I make no assumption as to the applicable statute of limitations in the numerous jurisdictions, foreign and domestic, where suit could be brought, nor on other factors which might have an impact on the viability of an as yet unfiled cause of action arising in the policy years in question.

10. Fortunately, in this instance, since the former *lex loci contractus* method would be of little assistance with reference to contracts, such as the ones at issue, negotiated among several parties in several states for insurance coverage in all states and abroad.

tracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location and subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.[11] § 188(2). Obviously, these factors do not provide a precise rule for choice of law. "All that can presently be done in these areas [such as contracts] is to state a general principle, such as application of the local law 'of the state of most significant relationship', which provides some clue to the correct approach but does not furnish precise answers. In these areas, the Court must look in each case to the underlying facts themselves...." § 6, Comment C. Viewing the facts in the light most favorable to plaintiffs, several of the factors enumerated augur for Delaware law to apply. Most of the tampons sold sold by plaintiffs in the policy years in question were manufactured in Delaware.[12] Delaware is the state of incorporation of plaintiffs and their parent, Esmark. Delaware is a principal place of business of the plaintiffs. Plaintiffs indicate that performance was to take place in Delaware. Plaintiffs also argue that Delaware law would fulfill the expectation of the parties and that the principal location of the risk insured was Delaware.[13]

In order to find that the situation is ripe for adjudication, that is, in order to find that a single choice of law decision can be made with respect to general condition "S" (rather than the court constructing a series of hypothetical situations to which it applies a choice of law analysis), this Court must determine that with respect to a provision concerning insurability of punitive damages, the public policy of the jurisdiction in which the actions of the insured cause harm will never be a significant factor in a choice of law analysis. This I cannot do.[14]

Some jurisdictions have determined that the efficacy of punitive damages is destroyed if insurance coverage is available. *See, e.g., Hartford Accident & Indemnity Co. v. U.S. Concrete Pipe Co.,* Fla.App., 369 So.2d 451 (1979); *City Products Corp. v. Globe Indemnity Co.,* Cal.App., 88 Cal. App.3d 31, 151 Cal.Rptr. 494 (1979). Surely a state in which a tortfeasor's egregious behavior causes injury will have an interest in preserving the effectiveness of the punitive damages award.

Consider a product manufactured solely in state A by a resident of state A, sold in state A to retailers for resale only in state B. None of the products are sold to consumers or used in state A. The manufacturer knows the products when used may cause grave harm to the consumer. The manufacturer procures insurance for punitive damages arising from use of its product from an insurer which is domiciled in state A. Punitive damages are awarded to state B's residents injured by the product. In this case, state B would have a significant, perhaps paramount, interest in the insurability of punitive damages. The interest of state A, comparatively, would be slight.

The Restatement provides at § 6 Comment F:

"Relevant policies of other interested states. In determining a question of

---

**11.** Section 193, dealing specifically with insurance contracts, is of little help in this situation. It provides:

"The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless *with respect to the particular issue, some other state has a more significant relationship, under the principles stated in § 6, to the transaction and the parties, in which event the local law of the other state will be applied.* Rest., 2d, *Conflict of Laws,* § 103 (emphasis supplied).

**12.** Others were manufactured in California.

**13.** Other factors weigh against Delaware law applying. The contract was not negotiated in Delaware, for instance.

**14.** *See In Re Air Crash Disaster Near Chicago, Illinois On May 25, 1979,* C.A. 7, 644 F.2d 594 (1981), *cert. denied,* 454 U.S. 878, 102 S.Ct. 358, 70 L.Ed.2d 187 and *In Re Air Crash Disaster At Washington, D.C. On January 13, 1982,* D.D.C., 559 F.Supp. 333 (1983) for an analysis of the interests of various states in the application of their punitive damages laws to an interstate tort.

choice of law, the forum should give consideration not only to its own relevant policies (*see* Comment e) but also to the relevant policies of all other interested states. The *forum should seek to reach* a result that will achieve the best possible accommodation of these policies. The forum should also appraise the relative interests of the states involved in the determination of the particular issue. In general, it is fitting that the state whose interests are most deeply effected should have its local law applied. Which is the state of dominant interest may depend upon the issue involved." *Restatement, 2d,* Conflict of Laws, § 6.

Here, punitive damages may or may not eventually be awarded in a specific case against the plaintiffs. Should they be, a choice of law analysis may or may not indicate that Delaware law applies to general condition "S". However, I am not prepared to say that the policy of the state where plaintiffs' activities caused injury will in no case be a significant factor in the choice of law analysis. Therefore, the situation is not ripe for a declaration that Delaware law will in all conceivable cases apply to general condition "S".

Moreover, the harm to the plaintiffs of dismissing this action, which is to be weighed in a ripeness analysis, is not overwhelming. *See Schick v. ACTWU, supra.* Plaintiffs state in their brief that the declaration requested "will afford all parties the ability better to forecast the liability arising from toxic shock syndrome claims, and so to gain the *present* ability to engage in more accurate financial reporting and business planning as well as claims management." This is undoubtedly true, although

the kind of hypothetical, case-by-case analysis this Court would be forced to engage in might be of less use in that regard than plaintiffs had hoped. Plaintiffs main concern, however, appears to be to ensure a Delaware forum for determining the issue of the insurability of punitive damages. Even assuming this to be a legitimate consideration in weighing the harm to plaintiffs of a dismissal, nothing prevents the plaintiffs from refiling in Delaware with respect to any particular case where the choice of law question has ripened.[15] It should be noted that a Delaware *forum* does not necessarily mean Delaware *law.* As I have mentioned, this Court would have to undergo a choice of law analysis, as would courts of other jurisdictions where such an action might be brought. Of course, a goal of choice of law analysis is to promote uniformity of decisions. *See* § 6 Restatement, 2d, *Conflicts of Law,* Comment i. A Delaware forum may or may not prove to be to plaintiffs' advantage.[16]

### III. PFP's STATUS

The only issue left[17] is plaintiff Playtex International Family Products ("PFP") status as an insured under these policies. PFP seeks a declaration that it is "an insured under all of the insurance policies in this action." PFP is a successor to International Playtex Incorporated ("IPI"), which was a subsidiary of Esmark and an insured during the policy years in question. The defendants agree that PFP is a successor corporation to IPI, that this fact was determined in the insured's favor by the Kansas Court, that that Court's decision is *res judicata* on this issue and that defendants are barred from relitigating it, and

**15.** Nothing in this Opinion should be construed to indicate that in a particular case where punitive damages are sought a judgment need be obtained before this Court will entertain a declaratory judgment suit with respect to the insurability of those punitive damages. That issue is not before this Court.

**16.** Plaintiffs also seek a declaration that the insurers are obligated to pay for expenses and interest with respect to suits for punitive damages arising from toxic shock syndrome, and appeals therefrom. This issue, however, requires an interpretation of the insurance con-

tracts which will turn largely on whether the insurance coverage is available for punitive damages. Thus the same choice of law analysis which makes a declaration on the insurer's liability for punitive damages inappropriate, also makes inappropriate a declaration on liability for expenses and interest.

**17.** Because of my decision in this case, I need not evaluate defendants' contention that this cause of action should be dismissed for failure to join indispensable parties.

that PFP, as successor to IPI, is entitled to the benefits to which IPI would be entitled under the policy. I so find.

## IV. *CONCLUSION*

For the foregoing reasons, those portions of plaintiffs' complaints dealing with the insurability of punitive damages, together with related costs and interest, which might arise in cases other than *O'Gilvie* are dismissed. Those portions dealing with the insurability of the award in *O'Gilvie* are stayed pending the decision of the ·Kansas Supreme Court.

An Order consistent with this Opinion has been entered.

### ORDER

For the reasons set forth in this Court's Opinion entered in this case on April 13, 1989, it is

ORDERED that the motion of the defendants to dismiss those portions of plaintiff's complaints dealing with the insurability of the award of punitive damages made in *O'Gilvie v. International Playtex, Inc.,* D.Kan., 609 F.Supp. 817 (1985), *rev'd.,* 821 F.2d 1438 (1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2014, 100 L.Ed.2d 601 (1988), together with interest, is stayed pending the outcome of the appeal to the Supreme Court of Kansas of the entry of partial judgment in *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.,* D.Kan., Case No. 88 C 463, Klein, J. (1988).

IT IS FURTHER ORDERED that the motion of the defendants to dismiss those portions of plaintiff's complaint dealing with the insurability of punitive damages, together with related costs and interest, which might arise in cases other than *O'Gilvie v. International Playtex, Inc.,* is GRANTED.