NORMAN EPSTEIN and MINNETTE PILOT EPSTEIN, Plaintiffs, v. CHATHAM PARK, INC., a Delaware corporation, GEORGE DOVENMUEHLE, GEORGE DOVENMUEHLE, JR., ELIZABETH D. ROTHERMEL, THEODORE H. BUENGER, EDNA D. BUENGER, RICHARD E. BUENGER, LESTER CROWN, ROBERT CROWN, JOHN CROWN, GLADYS CROWN, LEON MANDEL, HOWARD M. GOODSPEED, C. WALLACE JOHNSON, INC., an Illinois corporation, LEONARD GORDON, JULIUS J. SCHWARTZ, VICTOR NEMEROFF, ARNOLD H. MAREMONT, DAVID E. BRIGHT, BENJAMIN E. MITTELMAN, SAMUEL E. MITTELMAN, FRANKLIN-ADAMS COMPANY, an Illinois corporation, and COTTAGE 83 COMPANY, a Delaware corporation, Defendants.

(*June* 24, 1959.)

WOLCOTT, Justice, sitting.

Norman Epstein and Minette Pilot Epstein, plaintiffs *pro se.*

*William S. Megonigal, Jr.* (of Morris, Nichols, Arsht and Tunnell) for defendants. *Frank C. Bernard* (of Chicago, Ill.) of counsel.

Superior Court for New Castle County, No. 303, Civil Action, 1955.

WOLCOTT, Justice.[1]

This action was commenced on April 4, 1955 by foreign attachment. The attachments resulted in the seizure of substantial property of the appearing defendants, still held *in custodia legis.* On December 3, 1956 the defendants moved for summary judgment on the basis of an Illinois decree alleged to be a bar to the maintenance of the action.

Subsequently the action became a contest between the defendants seeking to bring on for decision their motion for summary judgment and the plaintiffs seeking to delay decision on that motion until after the completion of certain discovery and garnishment proceedings. This contest has resulted in a court file of over 200 separate motions, petitions and affidavits. However, nothing of any consequence has been decided.

It would serve no useful purpose to catalogue the varied maneuvers and charges of prejudice, fraud and conspiracy that have been made. It will suffice to say that the ultimate result of these procedural tactics was the voluntary disqualification of all the Judges of the Superior Court for the reason that their impartiality had been made impossible, and the present assignment.

After reviewing the voluminous record, I concluded that the defendants' motion for summary judgment should be brought on for decision since, in my opinion, it raised a legal defense which might be a bar to further prosecution of the case. This opinion is the decision on that motion.[2]

---

[1]Assigned to sit in the Superior Court of New Castle County to hear and decide this cause by order of the Chief Justice dated February 12, 1959, pursuant to Art. 4, § 19, *Delaware Constitution, Del. C. Ann.*

[2]The plaintiffs failed to appear at the argument on the motion nor have they seen fit to file briefs in opposition. Their activities have been restricted to the resumption of their dilatory maneuvers. As far as possible from the mass of papers filed by them, their position on the motion has been ascertained.

The complaint sets out two separate causes of action growing out of the sale and purchase of an apartment house project in Chicago, of which Chatham Park, Inc. (hereafter Chatham), defendant herein, was owner. The plaintiffs claim to be entitled to usual real estate brokers' commissions in the amount of $121,250. In addition, they claim a fee of $100,000 for having procured a mortgage loan used by the purchaser to consummate the purchase.

Plaintiffs' version of the circumstances surrounding the claim for the brokers' commission is that Chatham engaged them to find a purchaser for the project, agreeing to pay the usual commission. The plaintiffs procured a group of purchasers who organized Cottage 83 Company (hereafter Cottage), defendant herein, which consummated the purchase for $3,875,000. Prior to the consummation of the purchase, the purchasing group agreed to pay the plaintiffs' commission, which obligation was assumed by Cottage, but Chatham nevertheless guaranteed payment of the plaintiffs' commission.

With respect to the claim for the procuring fee, the plaintiffs' version is that the purchasing group, acting through two of its members, Benjamin E. Mittelman and Samuel E. Mittelman, (hereafter Mittelmans), non-appearing defendants herein, agreed with them that if they procured a mortgage loan in the amount of $2,800,000 to be used in the purchase, the purchasers would pay the plaintiffs a fee of $100,000. Cottage thereafter assumed this obligation. The plaintiffs claim to have procured the mortgage loan.

As parties defendant, the plaintiffs joined Chatham, Cottage, and twenty other defendants, among whom were included all the members of the purchasing group which organized Cottage, the ultimate purchaser. Also named as a defendant was a Chicago broker, Howard M. Goodspeed (hereafter Goodspeed).

Writs of attachment were issued as a result of which shares of stock in Chatham and Cottage, Delaware corporations, stand-

ing in the names of some of the defendants were seized. As a result, the owners of the stock appeared generally in the cause. Among the defendants whose property has not been seized and who have thus not appeared are the Mittelmans.[3] Since that time the plaintiffs have persistently sought discovery to prove their contention that the Mittelmans are beneficial owners of Cottage stock, and that, as such, they have property in Delaware subject to attachment.[4] The plaintiffs argue that jurisdiction over the Mittelmans is necessary to the decision of the cause.

By answer of Chatham and Cottage, later adopted by all of the appearing defendants, a different version of the circumstances surrounding the matter is alleged. The defendants assert that Chatham authorized the Chicago real estate broker, Goodspeed, defendant herein, to obtain a purchaser for the project upon the express conditions that Chatham would not be responsible for any commission and that Goodspeed would look solely to any purchaser for his commission. Goodspeed thereupon associated himself with another Chicago broker, Norman Shogren, (hereafter Shogren).[5] Thereafter, upon the plaintiffs' representation to Shogren that they had a prospective purchaser, the four brokers agreed to work together upon the sale, agreeing that they would collect their commission from the ultimate purchaser. On several occasions thereafter the four brokers agreed specifically with Chatham that it would not be liable for any commission.

Prior to the consummation of the purchase, the four brokers agreed with the purchasing group ultimately formed that it

---

[3]The resident agent of Cottage certified in answer to the attachment that the Mittelmans were not stockholders of record.

[4]It is at least doubtful that a beneficial interest in stock of a Delaware corporation, not evidenced by the corporate books and records, can be seized by Delaware foreign attachment. Cf. *Spoturno v. Woods*, 8 *W. W. Harr.* 378, 192 *A.* 689, and *Womack v. De Witt*, 1 *Terry* 304, 10 *A.* 2d 504.

[5]Not named as a party defendant.

would pay a single commission of $75,000.00 to the four brokers jointly, as full compensation for their complete services. The obligation thus agreed upon was assumed by Cottage. The defendants deny that the plaintiffs procured a mortgage loan used in the purchase and, in any event, aver that the single commission of $75,000 covered all services performed by the brokers.

As an affirmative defense the appearing defendants interposed a decree of the Circuit Court of Cook County, Illinois, entered in an action entitled, *Cottage 83 Company, et al. v. Norman Epstein, et al., General No.* 55C5585, as a bar to the maintenance of this action in Delaware. In addition to pleading the Illinois decree[6] the defendants, by affidavit, supplemented the Delaware record with authenticated portions of the Illinois record and moved for summary judgment.

The action in Illinois raised as a bar was commenced by Cottage and Chatham as an action in the nature of interpleader by reason of a demand made by Goodspeed and Shogren, two of the four brokers involved in the transaction, for payment of brokerage commissions allegedly due them for their services in connection with the purchase and sale of the apartment project.

The complaint filed in Illinois alleges the same circumstances surrounding the purchase and sale of the project as are alleged in the answer herein. Cottage admitted liability for brokerage commissions in the total amount of $75,000 and prayed for leave to deposit that sum in court together with a bond in the amount of $100,000 conditioned upon payment of any amount in excess of $75,000 which might be awarded the four brokers. To induce the Illinois court to take jurisdiction, Cottage alleged the dependency of this action in Delaware and the absence here of an indispensable party, *viz.,* Shogren.

---

[6]Actually, the original answer pleaded the pendency of the Illinois action as the ground for a stay of proceedings in Delaware, but the Illinois action having terminated in a decree favorable to the defendants prior to any decision in this action, by amendment the final Illinois decree was pleaded as a bar.

The Illinois court took jurisdiction of the cause. All the parties thereupon pursuant to order interpleaded among themselves with the exception of the plaintiffs here who, although served personally with process in Illinois, let the matter go by default.[7] The Circuit Court referred the cause to a Special Master whose report was confirmed by a decree entered July 3, 1956. From this decree one of the plaintiffs here, Minnette Pilot Epstein, appealed to the Supreme Court of Illinois. The appeal was later dismissed, apparently for failure to perfect the record. Finally, on March 1, 1957, the Circuit Court of Illinois denied a motion by the Delaware plaintiff, Minnette Pilot Epstein, to vacate the order of default and the decree of July 3, 1956.

The motion for summary judgment, based as it is upon the undisputable fact of a properly authenticated record of an Illinois court, raises only questions of law for decision. There is no factual issue with respect to the decree. I conceive these questions to be two, *viz.*, first, is the Illinois decree, on its face, under the doctrine of *res judicata*, a bar to the maintenance of this action, and, second, if it is such a bar, must it be sustained against collateral attack by the plaintiffs in this action. I will consider these questions in the order stated.

The doctrine of *res judicata* is common to all civilized systems of jurisprudence, and is based upon the salutary concept that the solemn decision of a competent court upon a disputed state of facts should forever set the controversy at rest. It embodies a rule of public policy, that courts as well as litigants should have rest and repose from the vexatious renewal of the same law suit. Without the doctrine court systems would become impotent to perform their most important function, that of ascertaining and enforcing rights, for without it litigation

---

[7]Actually, Norman Epstein completely defaulted in Illinois, but Minnette Pilot Epstein appeared in person and by counsel after the entry of an order of reference. She claimed to have filed an answer in Illinois which at no time has been produced. Her claim that it had been fraudulently removed from the court files was rejected by the Illinois court.

would be endless. The doctrine rests upon the reasonable premise that a party who has once litigated, or has had the opportunity to litigate, the same matter before a court of competent jurisdiction, must thereafter hold his peace.

The doctrine of *res judicata,* briefly stated, is that a final judgment upon the merits rendered by a court of competent jurisdiction may, in the absence of fraud or collusion, be raised as an absolute bar to the maintenance of a second suit in a different court upon the same matter by the same party, or his privies. 30 *Am. Jur., Judgments,* § 324; 50 *C. J. S. Judgments* § 592; *Williams v. Daisey,* 7 *W. W. Harr.* 161, 180 *A.* 908; *Iowa-Wisconsin Bridge Co. v. Phoenix Finance Corp.,* 2 *Terry* 527, 25 *A.* 2d 383, *certiorari* denied 317 *U. S.* 671, 63 *S. Ct.* 79, 87 *L. Ed.* 539. Nor, as a matter of fact, need the second suit be upon the identical cause of action for the prior judgment to act as a bar, for it suffices if the prior judgment has determined issues of fact raised by the pleadings essential to the maintenance of the second action, even though in form the second action differs from the first. *Worknot v. Millen's Adm'r,* 1 *Harr.* 139; *Jones v. Charles Warner Co.,* 2 *Boyce* 566, 83 *A.* 131; *Venetsanos v. Pappas,* 21 *Del. Ch.* 177, 184 *A.* 489; *Iowa-Wisconsin Bridge Co. v. Phoenix Finance Corp., supra; Coca-Cola v. Pepsi-Cola Co.,* 6 *W. W. Harr.* 124, 172 *A.* 260.

The most ordinary instance in which the doctrine is evoked is that of a suit brought later in point of time to the suit in which the judgment raised as a bar has been obtained. The ordinary sequence of time, however, is not a *sine qua non* to the availability of the doctrine as a denfense, for it is equally applicable in the case of a judgment rendered in a suit brought subsequent to the suit in which it is raised as a bar. The only requirement in this respect is that the judgment shall be valid and final. *Restatement, Judgments,* § 43; 30 *Am. Jur., Judgments,* § 362; 50 *C. J. S. Judgments* § 602.

There is a difference of view among the jurisdictions as to when a judgment obtains the requisite finality, but all

jurisdictions agree that after the expiration of the appeal time after affirmance on appeal, or after an appeal has been taken but dismissed for failure to perfect, the judgment has obtained finality. 30 *Am. Jur., Judgments,* § 342; 50 *C. J. S. Judgments* § 640.

Applying the foregoing general principles to the case at bar, it therefore appears, if the Illinois decree on its face is to be held a legal bar to the maintenance of this action, that the following requisites must be satisfied:

1. The Circuit Court of Cook County, Illinois, had jurisdiction of the subject matter of the suit and of the parties to it.

2. The parties to the Illinois action were the same as the parties, or their privies, in the case at bar.

3. The cause of action in Illinois was the same as that in the case at bar, or the issues necessarily decided in the Illinois action were the same as those raised in the case at bar.

4. The issues in the Illinois action were decided adversely to the contentions of the plaintiffs in the case at bar.

5. The Illinois decree is a final decree.

I will consider these in the order stated.

Clearly, the Circuit Court of Cook County had jurisdiction of the subject matter before it. By *Article VI*, § 12 *of the Illinois Constitution, S. H. A.,* the Circuit Courts are vested with original jurisdiction of all causes in law and equity, and are, therefore, courts of general jurisdiction. *Walton v. Albers,* 380 *Ill.* 423, 44 *N. E.* 2d 145. The action in the Circuit Court was one in the nature of interpleader, which, under Illinois law, may be commenced by a party, not a mere stakeholder, as would be the case in a strict interpleader action, but one who does not admit liability for the whole of the claim made upon it. *Foerster v. Enzenbacher,* 178 *Ill. App.* 551; *Nelson v. Urban,* 236 *Ill. App.* 447.

It is equally clear that the Circuit Court of Cook County had jurisdiction of the parties to the action before it. The action

in Illinois was commenced by Chatham and Cottage, Delaware corporations doing business in Illinois, and all of the appearing defendants either were served personally with summonses as residents of Illinois, or voluntarily appeared in the cause generally. Included among the defendants in Illinois were the plaintiffs in the case at bar who were served personally with process within Illinois.

There can be no question of the identity of parties between the action in Illinois and the case at bar. All appearing defendants in the case at bar were jurisdictionally before the Illinois court, either as plaintiffs, defendants, or intervening petitioners. In addition, the fourth broker, Shogren, appeared as a defendant. It is the fact that the Mittelmans were not brought in as parties in Illinois, but the effort to force their appearance in the case at bar has been fruitless. In any event, it is clear that all parties in the case at bar over whom jurisdiction has been obtained were properly before the Illinois court.

The issues tried and determined in Illinois are the same as the issues raised by the pleadings in the case at bar. Fundamentally, the issue between the plaintiffs and the defendants in Delaware is whether or not the plaintiffs, as the sole procuring brokers of the purchasers of the project, and as the procurers of a mortgage loan used to consummate the purchase, are entitled to the commissions they claim. The defendants in opposition claim that the plaintiffs were but two of four procuring brokers who were entitled jointly to a fixed fee of $75,000 from the purchaser as full compensation for all services performed by them in connection with the purchase of the project.

These same issues were tried on the merits in Illinois and decided in favor of the defendants and against the plaintiffs. Specifically, the decree of July 3, 1956 of the Illinois court adjudicated that: Cottage and Nemeroff, Maremont, Bright, and the Mittelmans (who were not made parties in Illinois), the original purchasing group, were indebted to the four brokers

jointly in the sum of $75,000; the amount of $75,000 was the entire amount due the four brokers for all services rendered in connection with the sale of the project, and in connection with obtaining the mortgage loan; Chatham, and the other individual defendants, were not indebted to the four brokers in any amount whatsoever; and the payment into court of $75,000 amounted to a complete satisfaction of all obligations owed to the brokers arising out of the purchase and sale, and constituted a complete satisfaction and discharge of all claims asserted by the plaintiffs in the Delaware case. To be sure, these plaintiffs allowed the Illinois proceeding to go by default as to them, but the opportunity was there for them to litigate those issues on the merits. This, they chose not to do.

There is no question but that the Illinois decree is final. The action in Illinois proceeded by the filing of a bill in the nature of interpleader, an order for the defendants and intervenors to interplead among themselves, an order of reference to a Special Master, hearings on the merits before the Master, the filing of a Master's Report, the entry of a decree overruling exceptions to the Master's Report, and embodying the Master's recommendations in the decree, an appeal from the decree by these plaintiffs to the Supreme Court of Illinois, the dismissal of that appeal, and, finally, the entry of an order in the Circuit Court denying a motion by these plaintiffs to vacate the order of default against them, the order of reference to a Master, and the final decree of July 3, 1956. The time for further appeal to the Supreme Court of Illinois in the cause having now expired, the finality of the Illinois decree is not debatable.

 It is thus plain that on its face the decree of the Illinois Circuit Court satisfies the requisites of the rule of *res judicata*. Furthermore, Article IV, § 1 of the Federal Constitution requires the States of the Union to give full faith and credit to the judicial proceedings of the other States. This provision requires every state to give to the judgments of another state, assuming jurisdiction by the state entering the judgment over the

parties and subject matter, the same effect which that judgment has in the state in which it was rendered. *Roche v. McDonald,* 275 *U. S.* 449, 48 *S. Ct.* 142, 72 *L. Ed.* 365. In Illinois the decree raised as a bar in this action would operate as an absolute bar against the re-litigation by these plaintiffs of the issues. *Winkelman v. Winkelman,* 310 *Ill.* 568, 142 *N. E.* 173. Thus, either upon principles of comity or by reason of Article IV, § 1, of the Federal Constitution, the decree is a bar to the re-litigation of the same issues in Delaware.

The first question for decision is therefore answered in the affirmative.

The second question for decision is the right of the plaintiffs to attack collaterally the decree of the Illinois court. They seek to avoid the bar of the Illinois decree upon the ground that it was obtained as a result of fraud.

Article IV, § 1 of the Federal Constitution permits collateral attack on the judgment of one state in the courts of another only in those circumstances in which the state rendering the judgment would permit collateral attack upon it. *Johnson v. Muelberger,* 340 *U. S.* 581, 71 *S. Ct.* 474, 95 *L. Ed.* 552; *United States v. Throckmorton,* 98 *U. S.* 61, 25 *L. Ed.* 93; *Du Pont v. Du Pont,* 8 *Terry* 231, 90 *A.* 2d 468, *certiorari* denied 344 *U. S.* 836, 73 *S. Ct.* 46, 97 *L. Ed.* 651.

It has been difficult to determine precisely the nature of the attack made by these plaintiffs upon the Illinois decree. No brief or memorandum in support has been filed. However, from the numerous papers which they have offered as exhibits attached to various affidavits and motions, and from oral statements made by them in the course of a hearing on a motion before one of the Judges of the Superior Court, it seems apparent that the charge is that the Illinois decree was procured by fraud upon the Illinois court.

Initially, they seem to contend that since the decree in Illinois was entered against them upon their default, that it may be

successfully attacked. As has been pointed out, however, both the plaintiffs were served with process personally in the State of Illinois and, consequently, their default in that proceeding was their own responsibility, since they had and were given ample opportunity to litigate the cause upon its merits.

Such being the case, it seems well settled in Illinois that no difference exists between a judgment rendered upon the merits after full litigation and a judgment rendered upon the default of parties. In either event, the judgment is not subject to collateral attack upon the basis of fraud, unless such fraud would have prevented the acquisition of jurisdiction by the rendering court. *Dyer v. Hopkins*, 112 *Ill.* 168; *Sielbeck v. Grothman*, 248 *Ill.* 435, 439, 94 *N. E.* 67; *Kirkham v. Harris*, 285 *Ill. App.* 385, 2 *N. E.* 2d 119. A collateral attack based upon the fact of default would, therefore, not be permitted in Illinois.

The second charge of fraud in support of the right to attack collaterally in Delaware the Illinois decree seems to be based upon the fact that the defendants in the Delaware action, in pleading to the action in Illinois, alleged that the Mittelmans were not members of the purchasing group at the time the option was exercised. It is argued that this allegation was perjured, since the Mittelmans were members of the purchasing group. However, after the hearing of testimony, the Master in Illinois found as a fact that the Mittelmans were members of the purchasing group at the time of exercise of the option. This finding was approved by the court after the hearing on exceptions to the Master's report. It thus seems obvious that, accepting the contention of the plaintiffs in this respect to the fullest, there was no fraud perpetrated upon the Illinois court.

Even, however, had this not been the fact, and assuming that the Illinois decree had been obtained upon perjured testimony, still that circumstance would not permit a collateral attack upon the decree in the State of Illinois and, thus, *a fortiori*, would not permit a collateral attack upon that decree

in Delaware unless perjury is a ground for collateral attack in Illinois. *Du Pont v. Du Pont, supra.*

It is plain that in Illinois irregularity or error in the proceedings leading to the entry of a judgment will not permit a collateral attack upon that judgment. The right to set aside in a collateral proceeding the decree of an Illinois court in Illinois stems only from the existence of fraud which effectively prevented the acquisition of jurisdiction, or which prevented the defendants in the cause from making their defense or having their day in court. *Chapman v. North American Life Insurance Co.*, 292 *Ill.* 179, 126 *N. E.* 732; *Wood v. First National Bank of Woodlawn*, 383 *Ill.* 515, 50 *N. E.* 2d 830. Thus assuming perjury in the pleading, a conclusion I think entirely unwarranted, still that fact would not permit collateral attack on the decree.

The foregoing, in my opinion, disposes of the matter and requires the entry of judgment in favor of the defendants. It has seemed proper to me to deal with the questions by an opinion of this length because of the troublesome course this cause has taken in Delaware, due largely to the fact that the plaintiffs, for the greater part of the time, have been without counsel in the cause, apparently being unable or, perhaps, unwilling to keep their lawyers under retention. It is unnecessary to fix the fault, but it is proper to observe that the absence of responsible counsel for the plaintiffs has occasioned unwarranted delay in the decision of this law suit.

For the same reason—the lack of counsel—I will mention briefly certain additional arguments made by them. They cite *Sanders v. Armour Fertilizer Works*, 292 *U. S.* 190, 54 *S. Ct.* 677, 78 *L. Ed.* 1206. The purpose in so doing is obscure, because the holding of that case is simply that a lien on the proceeds of insurance policies obtained by garnishment in an Illinois foreign attachment action followed the payment of the proceeds into court in a subsequent interpleader action in a Federal District

Court in Texas despite the Texas law which exempted such proceeds from attachment. The case has no pertinency .

Plaintiffs cite 6 *Moore's Federal Practice* (2nd Ed.) 56.17 (52) to the effect that a motion for summary judgment based upon a foreign judgment should be denied when there is a genuine issue of material fact respecting that judgment. There can be, of course, no issue of fact respecting the Illinois decree, the proof of which is made by authenticated portions of the record in that cause. The point is without merit.

Finally, plaintiffs cite *Ensminger v. Powers*, 108 *U. S.* 292, 2 *S. Ct.* 643, 27 *L. Ed.* 732. That case was the holding of a decree to be a nullity on the ground that the trial judge refused an opportunity to the plaintiff to argue, and abrogated to counsel for the defendant the decision on the question refusing to exercise his judicial function himself. Presumably, the case is cited in support of a charge made by at least one of the plaintiffs that a conspiracy exists between the Delaware Judiciary and counsel for the defendants to deprive the plaintiffs of justice in this cause. It is presumably based upon the disqualification of the Superior Court Judges of themselves on the ground that they were incapable of rendering an impartial decision in the cause. The alleged conspiracy exists only in the mind of the person who made the charge. The harassment to which the Superior Court Judges were subjected by the tactics of the plaintiffs was so aggravated as to warrant the conclusion that it was deliberate. In any event, the charge is spurious.

These plaintiffs throughout the course of this law suit have cluttered up the record with affidavits, letters and telegrams charging the unfortunate Judge who at the moment had the duty of trying to make order out of the chaos of this action, with prejudice, conspiracy and the deliberate disregard of their rights. Despite their incoherent diatribes, however, I venture the opinion that these plaintiffs have received at the hands of the Delaware Judges more tolerant forbearance than was deserved.

If a mistake has been made in this law suit, it has been one of kindness springing from sympathy with bitterly complaining parties who were without counsel. The unfortunate fact is that the only injury resulting has been to the defendants who have been deprived of the use of their property for over four years.

An order granting summary judgment for the defendants and dissolving the attachments may be presented upon proof of notice of one week to the plaintiffs, which notice shall be given by certified mail.