### PENNSYLVANIA MANUFACTURER'S ASSOCIATION INSURANCE COMPANY, Plaintiff Below, Appellant,

v.

### HOME INSURANCE COMPANY, Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: July 24, 1990.
Decided: Dec. 21, 1990.

J.R. Julian and Robert H. Richter, J.R. Julian, P.A., Wilmington, for appellant.

W. Wade W. Scott and Robert H. Sweeney, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for appellee.

Before CHRISTIE, C.J., HORSEY and WALSH, JJ.

WALSH, Justice:

This is an appeal from a decision of the Superior Court which denied the plaintiff, Pennsylvania Manufacturer's Association Insurance Company ("PMA"), indemnification/contribution from the defendant, Home Insurance Company ("Home"). PMA's claim for indemnification had its origin in a workmen's compensation award received by an employee who suffered two work-related injuries while his employer was covered by two separate insurance carriers. PMA claims the Superior Court erred as a matter of law in holding that the "last injurious exposure" rule precludes its claim for indemnification/contribution. PMA also contends the Superior Court erred in holding that an earlier decision of the Superior Court which ruled that PMA

was liable for the entire amount of the permanency awards was *res judicata* as to PMA's indemnification claim.

We hold that PMA's claim for indemnification/contribution is precluded by the last injurious exposure rule. We also rule that, while PMA's claim for indemnification/contribution is not barred under the principle of *res judicata*, the United States and Delaware Constitutions do not require the allowance of actions for indemnification/contribution in the context of an underlying workmen's compensation dispute. Accordingly, we affirm the decision of the Superior Court.

## I

The facts in this case are essentially undisputed. In November, 1982, Jessie R. McCoy ("McCoy") injured his back removing a ladder from a truck while working for Atlantic States Tree Expert Company ("Atlantic"). At the time of the accident, Atlantic's worker's compensation claims were covered under a policy issued by Home. The accident was determined to be a compensable work accident and McCoy was paid temporary total disability benefits from November 16, 1982 until August 1, 1983. McCoy returned to work at Atlantic on August 14, 1983.

In March, 1984, McCoy was involved in a second industrial accident when he fell from a tree. The safety harness he was wearing prevented him from falling to the ground, but he did strike the tree injuring his back and legs. At the time of this accident, Atlantic was insured for worker's compensation claims by PMA. Following this accident, McCoy again began to receive total disability benefits.

In April, 1985, McCoy filed a petition with the Industrial Accident Board (the "Board") for permanent partial disabilities of his low back and both lower extremities. The Board held a hearing on McCoy's petition in September of 1985. At the hearing, the Board heard the testimony of three physicians. Based upon their testimony, the Board determined that McCoy had: (1)

a 25 percent impairment of the low back, the first accident contributing 10 percent, the second accident contributing 15 percent; (2) a 20 percent impairment of the right leg, each accident contributing 10 percent; and (3) a 5 percent impairment of the left leg which was caused solely by the second accident. The Board, applying the last injurious exposure rule, concluded that PMA, as the insurer of the risk at the time of the second accident in 1984, was liable for all permanent injury compensation pursuant to 19 *Del.C.* § 2326.[1]

On appeal, the Superior Court affirmed the holding of the Board. The Superior Court determined that the application of the last injurious exposure rule precluded apportionment between successive insurers; thus, PMA was responsible for all permanent injury compensation. The court also determined that the preclusion of apportionment among successive insurers did not amount to an uncompensated taking in violation of the due process guarantees of the Fifth and Fourteenth Amendments of the Federal Constitution. *Atlantic States Tree Expert Company v. McCoy*, Del.Super., C.A. No. 85A–OC–13, Taylor, J., 1987 WL 8678 (January 6, 1987). The Superior Court declined to determine "as premature" whether an action for indemnification would lie since it viewed its function as merely to review the decision of the Board.

PMA then filed a separate action in Superior Court seeking indemnification/contribution from Home for the monetary value attributable to the partial impairment caused by the injuries sustained by McCoy in the 1982 industrial accident. On February 20, 1990, the Superior Court denied PMA's petition for indemnification/contribution from Home. This appeal followed.

## II

■ PMA's first contention on appeal is that the Superior Court erred in holding that the last injurious exposure rule precludes the recovery of indemnification/contribution from Home. The last injurious

---

1. While all of the permanency awards were charged against PMA, the Board found that

PMA was entitled to reimbursement from the Second Injury Fund.

exposure rule provides that when an employee sustains a subsequent industrial injury which is found to be a "new" injury, the liability for all permanency awards is placed on the insurer on the risk at the time of the second injury. *See* 4 Larson, *Workmen's Compensation Law* § 95.21, at 17–126 (1990). The last injurious exposure rule was first articulated by this Court in *Alloy Surfaces Company v. Cicamore*, Del.Supr., 221 A.2d 480, 485–87 (1966). In *Cicamore*, this Court held that when an employee is stricken by an occupational disease which develops over a long period of time, the burden of paying for the resulting disability rests solely with the last insurance carrier. *Id.*

■■■■ Subsequent articulations of the last injurious exposure rule sought to distinguish between a recurrence of a previous injury, in which case the carrier at the time of the original injury is liable, and a "new" injury, in which case the liability is placed on the carrier at the time of that injury. In *DiSabatino & Sons, Inc. v. Facciolo*, Del.Supr., 306 A.2d 716 (1973), which involved an employee who suffered two work-related injuries, this Court stated:

> If an injured workman suffers a recurrence, he may apply for further compensation under [19 *Del.C.* § 2347] and if there has in the meantime been a change of insurers, the liability therefor falls upon the insurer which was liable for the original benefits. On the other hand, if his condition is not a true recurrence, but is brought about or aggravated by a new work-connected accident, the liability falls upon that insurer whose policy is in effect at the date of the new accident.

*Id.* at 719. Thus, the last injurious exposure rule requires that the *entire* liability for compensation payments be placed upon the last insurer when an employee suffers two compensable accidents while working for the same employer. *See Forbes Steel and Wire Co. v. Graham*, Del.Supr., 518 A.2d 86, 89 (1986).

PMA argues that the last injurious exposure rule produces results which are both arbitrary and inequitable. PMA further argues that the unfairness implicit in the rule could be eliminated by allowing actions for indemnification/contribution between insurance carriers. We disagree. While this court has recognized that the application of the last injurious exposure rule may produce arbitrary results, *see DiSabatino*, 306 A.2d at 719, we have also noted that abandoning the rule could result in less certainty and cause the loss of benefits for an employee because of a change in carriers, which would be equally as arbitrary. *See Forbes*, 518 A.2d at 89.

To introduce the prospect of further litigation between carriers would insert an additional delaying element and render uncertain the need for prompt response to the plight of the injured employee. Some states have adopted rules permitting indemnification/contribution actions among successive insurers. In *Colonial Insurance Co. v. Industrial Accident Comm.*, Cal.Supr., 29 Cal.2d 79, 172 P.2d 884, 886 (1946), the California Supreme Court held that an employee suffering from a progressive occupational disease could recover from one or more of the successive carriers. The court noted that successive carriers should then apportion their respective share of the cost in a separate proceeding. *Id.* In *Cicamore*, this Court, in commenting on *Colonial Insurance*, noted its awareness that some states had departed from the majority rule in permitting apportionment among insurance carriers. *Cicamore*, 221 A.2d at 487. This Court also noted that: "[i]f the majority rule placing responsibility upon the last carrier, which we are now accepting as the law of this State, be deemed unjust, the remedy lies in the General Assembly." *Id.; see DiSabatino*, 306 A.2d at 719.

■■■ In the present case, the Board determined that McCoy's injury was a new industrial injury, not a recurrence. Applying the last injurious exposure rule, it ordered PMA to make all permanency payments thereby absolving Home of any liability. This decision was subsequently upheld by the Superior Court. PMA then sought to recover a portion of the cost of the permanent injury compensation from

Home, the insurer at the time of the first accident. PMA's attempt to recover from Home was also denied by the Superior Court. Thus, PMA had been held responsible for all permanent compensation.

The result in this case may, indeed, be arbitrary as PMA claims. PMA has been saddled with the responsibility of meeting all permanency awards, even though some of the payments are attributable to injuries incurred while Atlantic was insured by Home. But the perceived arbitrariness of this rule is not a sufficient basis to permit insurance carriers to seek indemnification from each other. As we noted above, the responsibility of changing this rule rests with the legislature, not the Court. Thus, if insurance carriers are to be allowed to seek indemnification/contribution from other carriers as a result of the application of the last injurious exposure rule, the legislature must expressly provide for actions of this nature. Accordingly, we affirm the decision of the Superior Court holding that the last injurious exposure rule precludes indemnification/contribution.

### III

PMA's second contention is that the Superior Court erred in holding that the earlier ruling of the Superior Court, that 19 *Del.C.* § 2327 [2] was constitutional, was *res judicata* as to PMA's claim that its right to indemnification/contribution is mandated by the United States and Delaware Constitutions. While we disagree with the Superior Court's characterization of PMA's constitutional claim, we conclude that indemnification/contribution is not constitutionally mandated.

■ The doctrine of *res judicata* provides, "that a final judgment upon the merits rendered by a court of competent jurisdiction may, in the absence of fraud or collusion, be raised as an absolute bar to the maintenance of a second suit in a different court upon the same matter by the same party, or his privies." *Epstein v. Chatham Park, Inc.*, Del.Supr., 153 A.2d 180, 184 (1959). This doctrine is designed to promote finality and to insure efficiency in judicial proceedings. *Id.*

In the first action filed in Superior Court, Atlantic, through its insurance carrier PMA, appealed the Board's award of permanent injury compensation to McCoy. The Superior Court held that all permanency awards were to be charged against PMA, the carrier at the time of the last accident. *Atlantic*, slip op. at 7. In appealing the decision of the Board, PMA claimed that it was unconstitutional to deny application of 19 *Del.C.* § 2327, which provides for apportionment among insurance carriers, to situations in which the last injurious exposure rule is applied. [3]

In the subsequent action for indemnification/contribution against Home, from which it currently appeals, PMA claimed that if apportionment among successive insurers is not permitted pursuant to section 2327, due process mandates the allowance of actions for indemnification/contribution. The Superior Court held that because this issue had been litigated in the previous action, it was barred by the doctrine of *res judicata*. We disagree.

■ PMA's claim in its direct appeal of the Board's decision was based on the unconstitutionality of 19 *Del.C.* § 2327 as interpreted in *Forbes*, while the claim in the subsequent action against Home assumed the constitutionality of the statute but argued that the resulting "taking" mandated the allowance of the remedy of indemnification/contribution under the United States and the Delaware Constitutions. Because

---

2. 19 *Del.C.* § 2327 provides in pertinent part: Whenever a subsequent permanent injury occurs to an employee who has previously sustained a permanent injury, from any cause, whether in line of employment or otherwise, the employer for whom such injured employee was working at the time of such subsequent injury shall be required to pay only that amount of compensation as would be due for each subsequent injury without regard to the effect of the prior injury.

3. PMA claims that by requiring it to compensate McCoy for that portion of his injuries which occurred in 1982 the State is, in effect, authorizing the taking of its property without compensation in violation of the Fifth and Fourteenth Amendments of the Constitution.

PMA does not challenge the constitutionality of section 2327 in the present action, the doctrine of *res judicata* may not be raised as a bar.

We turn, therefore, to the merits of PMA's claim that an action for indemnification/contribution to recover payments made under the last injurious exposure rule is mandated by the due process requirement of the United States and Delaware Constitutions. The due process guarantee of the Fifth Amendment prohibits the taking of a citizen's property without just compensation.[4] The Fourteenth Amendment applies this requirement to the states.

■ PMA's due process claim is directed against a State policy as reflected in the application of its Workmen's Compensation Act. Such legislation is deemed economic legislation enacted pursuant to the state's police power. The rational basis test is used to review economic legislation which does not contain a suspect class. *See Lowicki v. Unemployment Ins. Appeal Board,* Del.Supr., 460 A.2d 535, 538 (1983). "Under the rational basis test, legislation will be deemed constitutional if the legislative means are rationally related to a legitimate governmental objective or purpose." *Id.* at 539; *see also Cheswold Vol. Fire Co. v. Lambertson Const.,* Del.Supr., 489 A.2d 413, 416 (1984).

■ The primary purposes of Delaware's Worker's Compensation statute are well defined. "[T]he twin purposes of the Delaware Workmen's Compensation Law are to provide a scheme for assured compensation for work-related injuries without regard to fault and to relieve employers and employees of the expenses and uncertainties of civil litigation." *Kofron v. Amoco Chemicals Corp.,* Del.Supr., 441 A.2d 226, 231 (1982); *Champlain Cable v. Employers Mutual Liability Ins.,* Del.Supr., 479 A.2d 835, 840 (1984). The last injurious exposure rule, clearly furthers these objectives. It provides an efficient means for employees to redress their claims, and it avoids the often costly and uncertain course of conventional litigation. Moreover, as previously noted, to permit erosion of the last injurious exposure rule by sanctioning litigation between carriers would introduce a further element of uncertainty and encourage competing carriers to dispute their primary obligations to the injured employee in order to protect their later claims for indemnification.

Thus, we find that the last injurious exposure rule is rationally related to the permissible governmental goal of providing efficiency and certainty in the settlement of worker's compensation claims. To the extent it has the further, but necessary, effect of limiting the indemnification/contribution claim of successive insurance carriers, it does not offend the due process requirements of the United States or Delaware Constitutions.

The judgment of the Superior Court is AFFIRMED.

---

4. The due process requirement imposed by the Federal Constitution is analogous to that imposed by Delaware Constitution, Article I, §§ 7 & 9. *See In re Carolyn S.S.,* Del.Supr., 498 A.2d 1095, 1097–98 & n. 3 (1984).