# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KIM MCMANUS,

    Plaintiff,

v.

EAST POINTE APARTMENTS,
D/B/A EAST POINTE
ASSOCIATION and DONNA
CLEMENTONI,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N14A-06-002 JRJ

## OPINION

Date Submitted: February 13, 2017
Date Decided: April 17, 2017

*Upon Appeal from the Decision of the Court of Common Pleas*: **REVERSED.**

Kim McManus, P.O. Box 43, Claymont, DE. *Pro se* Plaintiff-Below, Appellant.

Michael P. Morton, Esquire, Nicole M. Faries, Esquire, Michael P. Morton, P.A., Greenville Professional Center, 3704 Kennett Pike, Suite 200, Greenville, DE. Attorneys for Defendants-Below, Appellees.

**Jurden, P.J.**

# I. INTRODUCTION

Plaintiff-Below, Appellant Kim McManus has appealed the Court of Common Pleas' bench ruling granting Defendants-Below, Appellees' Motion to Dismiss the Complaint. For the reasons set forth below, the bench ruling of the Court of Common Pleas is **REVERSED.**

# II. BACKGROUND

This appeal arises from a dispute between Plaintiff-Below, Appellant Kim McManus ("McManus") and Defendants-Below, Appellees East Pointe Apartments ("East Pointe") and Donna Clementoni (collectively, "Appellees"). McManus filed a Complaint in the Court of Common Pleas alleging that Appellees' negligence caused her to sustain eye injuries.[1] After oral argument on Appellees' Motion to Dismiss McManus' Complaint, the Court of Common Pleas dismissed the case on the basis of *res judicata.*[2]

## A. Alleged Infestations

McManus, a tenant in East Pointe, alleges that after a maintenance worker replaced the base of her kitchen sink, "swarms of various types of bugs" began to enter her apartment and she noticed "severe mold" on the floor and wall under the

---

[1] Complete Record from Court of Common Pleas ("Court of Common Pleas Record"), Complaint ("Compl.") (Trans. ID. 60317424).

[2] May 16, 2014 Transcript of Civil Motion Proceedings at 18:16–20:3; 25:8–9 ("Tr.") (Trans. ID. 59637963).

2

base of her kitchen sink.[3] McManus claims that she was stung by one of the bugs which caused an allergic reaction in her right eye, rendering it "large, swollen, imflammated [sic], bulging," and weakening her vision in that eye.[4] As a result, McManus sought treatment from an ophthalmologist.[5]

McManus alleges that she contacted the former manager of East Pointe, Donna Clementoni ("Clementoni"), in writing to request that a pest control company come to her apartment to inspect for insect infestations.[6] Clementoni called McManus twice to inform her that a pest control company was scheduled to inspect her apartment.[7] On June 14, 2013, a young man who McManus claims was pretending to be an exterminator showed up at McManus' apartment.[8] McManus alleges that he came in and "simply looked around and said, 'I don't see any termites, if you see any more termites let us know.'"[9] McManus claims that this same young man returned to her apartment on July 5, 2013.[10] Due to her suspicions after her interaction with him in June, McManus demanded to see his photo identification and/or a business card that stated what company he worked

---

[3] Compl. ¶ 1.
[4] Id. ¶ 2. McManus alleges the bug that stung her "ha[d] venom." Id.
[5] Id.
[6] Id. ¶ 3.
[7] Id.
[8] Id.
[9] Id.
[10] Id.

3

for.[11]  Because he could not provide her with identification or a business card, McManus refused to let him into her apartment, and told him to come back when he was able to produce proof of identification.[12]  According to McManus, the young man never returned.[13]

McManus alleges that on July 9, 2013, Mid Atlantic Pest Services treated only the exterior of her apartment building for termites,[14] and that East Pointe never addressed the mold issue in her apartment.[15]

McManus claims that because of the injuries to her right eye, she is now insecure with her appearance and has been unable to seek employment.[16]  For her alleged pain and suffering, medical expenses related to her eye, loss of income, and expected future medical expenses and income loss, McManus seeks monetary relief in the amount of $32,433.60.[17]

## B. Previous Summary Possession Litigation Between McManus and East Pointe

On June 24, 2013, East Pointe filed a summary possession action (the "First Action") against McManus in the Justice of the Peace Court ("JP Court"),[18]

---

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.* ¶ 4.

[15] *Id.* ¶ 1.

[16] *Id.*

[17] *Id.* ¶ 5.

[18] This case is referred to in the Court of Common Pleas Record as JP13-13-007849. *See* Court of Common Pleas Record, Motion of Defendants, East Pointe Apartments – DBA East Pointe

4

seeking unpaid rent and late fees.[19] On September 12, 2013, a three-judge panel entered judgment for East Pointe for rent and late fees through August 31, 2013.[20] At that hearing, McManus asserted a counterclaim that East Pointe's eviction action was retaliatory, spurred by her complaints about termites and mold.[21] The three-judge panel rejected McManus' retaliation counterclaim.[22]

On October 23, 2013, East Pointe filed a second summary possession action (the "Second Action") against McManus, attempting to proceed against McManus as a holdover tenant.[23] On December 9, 2013, the JP Court heard argument on the Second Action.[24] On December 12, 2013, the JP Court dismissed East Pointe's Second Action without prejudice,[25] determining the Second Action was:

> procedurally infirm as it include[d] an incorrect rent due as of the date of filing and also include[d] late fees for the months of April, May,

---

Associates and Donna Clementoni, to Dismiss Plaintiff's Complaint ("Defs.' Motion to Dismiss") Ex. C, JP Court's March 12, 2014 Order ("March 12, 2014 Order"); *see also* Tr. at 5:1–3.

[19] *See* Defs.' Motion to Dismiss Ex. C, March 12, 2014 Order; *see also* Tr. at 5:1–3.

[20] Defs.' Motion to Dismiss Ex. C, March 12, 2014 Order. The record is unclear as to the outcome regarding summary possession, as McManus' tenancy continued through April of 2014. *See McManus v. Justice of the Peace Court #13*, 2014 WL 2200498, at *1 (Del. Super. Apr. 30, 2014) ("*McManus I*").

[21] Defs.' Motion to Dismiss Ex. C, March 12, 2014 Order.

[22] *Id.* Ex. C, March 12, 2014 Order. The JP Court's September 12, 2013 judgment has not been provided to the Court. As such, the Court is relying on supplementary documentation, including later JP Court orders that refer to the September 12, 2013 judgment, in order to analyze the issues before it.

[23] This case is referred to in the Court of Common Pleas Record as JP-13-13-014076. *Id.* Ex. B, JP Court's December 12, 2013 Order ("December 12, 2013 Order").

[24] *Id.* Ex. B, December 12, 2013 Order.

[25] *Id.* Ex. B, December 12, 2013 Order. The Second Action was dismissed without prejudice to East Pointe's "right to properly re-file a Complaint relating to the alleged issues of any rent due after August 31, 2013 or 'hold-over' status." *Id.* Ex. B, December 12, 2013 Order.

5

and June 2013. It appears that the Complaint filed is exactly the same as the Complaint previously filed . . . for which Plaintiff has already received a judgment.[26]

The JP Court in the Second Action also dismissed McManus' retaliation counterclaim with prejudice:

> In regard to the Defendant's counterclaim relating to allegations of retaliation, Defendant asserts that the Plaintiff's action in filing for summary possession represents retaliation for her written request for remediation of a termite problem sent to the landlord in June 2013. The Court notes that the Defendant raised the same issue during the *de novo* hearing in the matter of JP-13-12-007849 and was found to be unable to meet her burden of proof relating to the issue. Consequently, the matter is considered to be *Res Judicata*, which means the issue has already been legally determined and may not be subject of [sic] further legal review.[27]

McManus appealed the dismissal of her counterclaim.[28] On February 28, 2014, the JP Court held a *de novo* hearing before a three-judge panel.[29] On March 12, 2014, the panel issued an Order affirming the JP Court's December 12, 2013 dismissal.[30] As to McManus' counterclaim, the panel held:

> Defendant McManus' counterclaim alleging retaliatory acts by the landlord is barred by the doctrine of *res judicata*. In the previous case (JP13-13-007849) McManus argued that the landlord's sole reason for attempting to terminate her lease was because she had complained about termites in and around her unit. The previous panel rejected McManus' argument, concluding the landlord's demand for unpaid rent and subsequent filing of a summary possession case was not

---

[26] *Id.* Ex. B, December 12, 2013 Order.
[27] *Id.* Ex. B, December 12, 2013 Order.
[28] *Id.* Ex. C, March 12, 2014 Order.
[29] *Id.* Ex. C, March 12, 2014 Order.
[30] *Id.* Ex. C, March 12, 2014 Order.

6

retaliatory. Defendant now raises the same argument in the instant case. McManus still references her complaints about termites as the reason the landlord is terminating her lease. This issue was fully litigated in the previous case. Defendant may not agree with the Court's finding, but she cannot re-litigate this issue . . . Defendant's counterclaim for retaliation by the landlord due to complaints by the tenant of termite infestation is dismissed with prejudice.[31]

Additional summary possession proceedings that are related to, but do not bear on, the instant personal injury case ensued after the issuance of the March 12, 2014 Order.[32]

---

[31] *Id.* Ex. C, March 12, 2014 Order.

[32] Given the number of courts, cases, and counterclaims involved, the procedural history is somewhat confusing. The Court has done its best to glean the following procedural history from the record:

On December 16, 2013, East Pointe filed a new case for summary possession. *Id.* Ex. C, March 12, 2014 Order. It appears that on March 27, 2014, the JP Court found for East Pointe in a separate summary possession action. *McManus I*, 2014 WL 2200498, at *1. This action appears to have been identified as JP13-13-016266. Appellant's Opening Brief at 12 ("Appellant's Opening Br.") (Trans. ID. 60094468). On April 2, 2014, McManus filed either a Notice of Appeal or a petition for a writ of certiorari in the Superior Court. *Id.*; *McManus v. Justice of Peace Court No. 13*, 2014 WL 4922487, at *1 (Del. Sept. 29, 2014) ("*McManus II*"). The record is inconsistent regarding the title of the April 2, 2014 filing. *See McManus I*, 2014 WL 2200498, at *1; *McManus II*, 2014 WL 4922487, at *1.

On April 14, 2014, a three-judge panel issued a writ of possession for East Pointe. *McManus I*, 2014 WL 2200498, at *1. East Pointe served McManus with an eviction notice on April 21, 2014, requiring her to vacate by the following day. *Id.* On April 23, 2014, the Superior Court issued an order granting McManus' *in forma pauperis* request, denying an emergency stay which McManus had apparently requested, and dismissing McManus' appeal for lack of jurisdiction. *Id.* On April 29, 2014, McManus "filed a paper that might be viewed as a motion for re-argument of the April 23, 2014 order." *Id.* On April 30, 2014, the Superior Court entered a Final Order of Dismissal. *Id.* Referencing *Reise v. Board of Building Appeals of City of Newark*, 746 A.2d 271, 274 (Del. 2000), the Final Order of Dismissal noted that the Superior Court's "jurisdiction to review a three[-judge] Justice of the Peace [Court] panel decision is extraordinarily limited" and "[t]he review may only consider errors of law." *McManus I*, 2014 WL 2200498, at *1.

McManus appealed the Superior Court's Final Order of Dismissal to the Delaware Supreme Court. *McManus II*, 2014 WL 4922487, at *1. The Delaware Supreme Court affirmed the

## C. The Personal Injury Action on Appeal

On February 28, 2014, McManus filed the instant personal injury action in the Court of Common Pleas. In response, Appellees moved to dismiss, arguing that the issues alleged in the Complaint are barred by the doctrine of *res judicata*.[33] The Court of Common Pleas heard oral argument on May 16, 2014, and found in favor of Appellees, concluding that McManus' "claim with respect to termites"[34] had been decided on the merits by the JP Court in the First Action when McManus effectively asserted it as a counterclaim.[35] Consequently, the Court of Common Pleas dismissed the case based on *res judicata*.[36] On June 6, 2014, McManus timely appealed the Court of Common Pleas' decision to this Court.[37]

## III. PARTIES' CONTENTIONS

McManus argues that her retaliation counterclaim was improperly dismissed because she was never afforded the opportunity to present evidence or documents

---

Superior Court's Final Order of Dismissal. *Id.* On October 14, 2014, McManus then moved for a rehearing *en Banc*, which the Supreme Court denied on October 16, 2014. Letter Requesting Vacation of Briefing Schedule ("Letter Req. Vacation of Br. Sched.") Ex. D (Trans. ID. 60107299). McManus filed a petition for writ of certiorari to the United States Supreme Court, which was denied. *McManus v. Justice of the Peace Court #13*, 135 S. Ct. 2382 (2015).

[33] Defs.' Motion to Dismiss; Tr. at 3:10–17.

[34] Tr. at 19:4–6.

[35] *Id.* at 18:16–20:3.

[36] *Id.* at 20:2–3; 25:8–9.

[37] Notice of Appeal (Trans. ID. 55552738). The Court recognizes that there has been a significant delay in these proceedings. The Court of Common Pleas Record was not filed in this Court until April 14, 2016, and the May 16, 2014 Transcript was not filed in this Court until October 3, 2016. The Court conveyed a briefing schedule to the parties on December 22, 2016, ordering all briefing to be completed by February 14, 2017. Briefing Schedule (Trans. ID. 59989736). Given that the docket now contains all of the necessary filings, this case is ripe for decision.

related to the counterclaim when she asserted it in the JP Court during the First Action.[38] Therefore, McManus argues, the instant personal injury claim is not barred by *res judicata* and should not have been dismissed by the Court of Common Pleas.[39]

Appellees argue that because McManus continues to "challenge the underlying facts" of the summary possession cases—which have been "finally decided"—through allegations of retaliation and personal injury, the Court of Common Pleas properly dismissed McManus' personal injury claim under the doctrine of *res judicata*.[40]

## IV. STANDARD OF REVIEW

When this Court reviews a decision of the Court of Common Pleas, "the Court has an obligation to correct errors of law and to review findings of fact 'to determine if they are sufficiently supported by the record and are the product of an orderly and logical deductive process.'"[41] Whether to grant a motion to dismiss under Court of Common Pleas Civil Rule 12(b)(6) is a question of law subject to

---

[38] *E.g.*, Appellant's Reply Brief at 4 ("Appellant's Reply Br.") (Trans. ID. 60204845).

[39] *Id.*

[40] Letter Req. Vacation of Br. Sched. This Letter also incorrectly asserts that "Plaintiff is seeking to have the final judgment of the Justice of the Peace Court set aside so that she can return to the rental unit from which she was evicted." *Id.* The Court notes that this statement misconstrues the request for relief in McManus' Complaint.

[41] *State v. Anderson*, 2010 WL 4513029, at *4 (Del. Super. Nov. 1, 2010) (quoting *J.S.F. Props., LLC v. McCann*, 2009 WL 1163494, at *1 (Del. Super. Apr. 30, 2009)), *aff'd*, 21 A.3d 52 (Del. 2011).

9

*de novo* review.[42]

Delaware courts afford *pro se* litigants additional consideration, given their lack of familiarity with the law and court procedures:[43]

> The Court may . . . interpret a pro se Plaintiff's filings and pleadings if this can be done reasonably, in order to alleviate the technical inaccuracies typical in many pro se legal arguments. While procedural requirements are not relaxed for any type of litigant (barring extraordinary circumstances or to prevent substantial injustice), the Court may grant pro se litigants some accommodations that do not affect the substantive rights of those parties involved in the case at bar. The Court may construe the pleading in a way to do justice to all concerned.[44]

## V. DISCUSSION

The Court of Common Pleas dismissed McManus' personal injury claim based on the doctrine of *res judicata*. Under the doctrine of *res judicata*, "a final judgment upon the merits rendered by a court of competent jurisdiction may, in the absence of fraud or collusion, be raised as an absolute bar to the maintenance of a second suit in a different court upon the same matter by the same party, or his privies."[45] Thus, a plaintiff cannot split claims arising out of the same transaction(s) by seeking recovery in different courts, even when the substantive

---

[42] *Howell v. Persans*, 2012 WL 1414296, at *1 (Del. Super. Feb. 8, 2012).

[43] *Draper v. Med. Ctr. of Delaware*, 767 A.2d 796, 798 (Del. 2001).

[44] *Alston v. State*, 2002 WL 184247, at *1 (Del. Super. Jan. 28, 2002); *see also Tsipouras v. Szambelak*, 2012 WL 1414096, at *1 (Del. Super. Apr. 5, 2012), *aff'd*, 58 A.3d 984 (Del. 2012).

[45] *Pennsylvania Mfrs. Ass'n Ins. Co. v. Home Ins. Co.*, 584 A.2d 1209, 1213 (Del. 1990) (quoting *Epstein v. Chatham Park, Inc.*, 153 A.2d 180, 184 (Del. Super. 1959)).

theory of recovery is different, "unless there [is] a valid reason for the splitting."[46]

As explained by the Court of Chancery in *Maldonado v. Flynn*:

> The rule against claim splitting is an aspect of the doctrine of res judicata and is based on the belief that it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all of the evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts or at different times.[47]

The Court uses a five-pronged test to determine whether a claim is barred by

*res judicata*:

> First, the original court must have had jurisdiction over the subject matter and the parties. Second, the parties to the original action must be the same as those parties, or their privies, in the current case. Third, the original cause of action, or the issues decided, must be the same in both cases. Fourth, the issues in the earlier action must have been decided adversely to the current plaintiff. Fifth, the decree in the earlier action was a final decree.[48]

The JP Court is a court of limited jurisdiction. Pursuant to 10 *Del C.* § 9301,

the JP Court has civil jurisdiction over: contractual disputes where the amount in

controversy does not exceed $15,000; replevin actions where the amount in

controversy does not exceed $15,000; negligence cases, *not including personal

injury*, where the amount in controversy does not exceed $15,000; and landlord-

---

[46] 417 A.2d 378, 382 (Del. Ch. 1980).

[47] *Id.* As such, "all claims arising out of an incident, accident or transaction [must] be presented at one time in a court having proper jurisdiction over all claims." *Jankus v. Petroleum Equip., Inc.*, 1996 WL 453329, at *1 (Del. Super. May 16, 1996).

[48] *Mott v. State*, 49 A.3d 1186, 1189 (Del. 2012), *as corrected* (Aug. 1, 2012) (citing *Epstein*, 153 A.2d at 183).

tenant cases and appeals, including actions for summary possession.[49] The JP Courts' jurisdiction over summary possession actions is exclusive.[50]

Because of the JP Courts' limited jurisdiction, "it is not always possible for a litigant seeking summary possession to receive complete relief in the Justice of the Peace Court for all claims relating to the transaction(s) at issue."[51] In *Bomba's Restaurant & Cocktail Lounge, Inc. v. Lord De La Warr Hotel, Inc.*, the Delaware Supreme Court held that a plaintiff seeking summary possession is permitted to split his or her cause of action and pursue the summary possession action in the JP Court while maintaining "a plenary action between the same parties over the same lease in another court."[52] However, if a plaintiff does not split his or her claims at the time he or she brings the summary possession action, he or she will thereafter be barred from later bringing a different claim arising out of the same transaction or occurrence.[53]

In contrast, defendants in the JP Court who wish to bring counterclaims

---

[49] Notably, the Delaware Courts' website expressly notes that personal injury claims are exempted from the matters over which the JP Courts have jurisdiction.
[50] 25 *Del. C.* § 5701.
[51] *Newark Shopping Ctr. Owner, LLC v. Pizza Univ. of Delaware, Inc.*, 2016 WL 3951719, at *2 (Del. Super. July 14, 2016) (citing *Bomba's Restaurant & Cocktail Lounge, Inc. v. Lord De La Warr Hotel, Inc.*, 389 A.2d 766, 770 (Del. 1978) ("There is nothing in the summary possession statute which in any way reflects a legislative intention to enlarge the jurisdictional limits of [the Justice of the Peace Court]")); *cf. Mells v. Billops*, 482 A.2d 759, 761 (Del. Super. 1984) (holding that *res judicata* barred the plaintiff from maintaining a second suit in the Superior Court for a personal injury claim when the plaintiff "voluntarily chose to split his claim and obtained a judgment for property damage in the Justice of the Peace Court, which has no jurisdiction to address personal injury claims.").
[52] *Bomba's*, 389 A.2d at 770; *see also Newark Shopping Ctr.*, 2016 WL 3951719, at *2.
[53] *Jezyk v. Brumbaugh*, 1995 WL 264555, at *11 (Del. Super. Apr. 19, 1995).

outside of the JP Courts' jurisdiction and arising out of the same transaction or occurrence are not barred by *res judicata* from later bringing those claims in a court of competent jurisdiction. In *Jankus v. Petroleum Equipment, Inc.*,[54] the plaintiff filed a debt action in the JP Court. In response, the defendant asserted a personal injury counterclaim, which was properly dismissed by the JP Court for lack of jurisdiction.[55] When the defendant subsequently brought the personal injury claim in Superior Court, the plaintiff moved to dismiss the claim on the basis of *res judicata*.[56] The Superior Court in *Jankus* rejected the plaintiff's argument, based on the following reasoning:

> [R]es judicata will bar [the plaintiff] from bringing another claim [arising out of the same incident, accident, or transaction] in another court. But there is a difference if you are a defendant. As a defendant, you are forced into court and have no say in the forum selection. Thus, the risk of loss of a potential claim under *res judicata* should not be applied in this situation.[57]

Neither party brought *Jankus* to the attention of the Court of Common Pleas during the hearing on East Pointe's Motion to Dismiss.

Here, McManus' personal injury claim arises out of the same transaction as her retaliation counterclaim in the First Action. Had McManus simply reasserted her retaliation claim here, the Court of Common Pleas' holding would have been

---

[54] *Jankus*, 1996 WL 453329, at *1.
[55] *Id.*
[56] *Id.*
[57] *Id.*

13

appropriate. However, McManus now asserts a claim based on a theory of personal injury. Therefore, the Superior Court's holding in *Jankus* is applicable to the instant case. Even though McManus' counterclaim arises out of the same set of facts and circumstances as those which gave rise to East Pointe's summary possession claims against her, her personal injury claim is not barred by *res judicata* because McManus was the *defendant* in the summary possession cases and the JP Court does not have jurisdiction over personal injury claims. *Jankus* makes clear that McManus is entitled to have her personal injury claim fully and fairly heard by a court of competent jurisdiction.[58]

Under 10 *Del C.* § 9301, while the JP Court had jurisdiction to consider McManus' retaliation counterclaim, it did not have jurisdiction to consider a personal injury claim arising out of the same transaction. Therefore, the JP Court's determination that McManus' retaliation claim had no merit has no *res judicata* effect on her personal injury claim.

---

[58] *See Jankus,* 1996 WL 453329, at *1.

14

## VI. CONCLUSION

For the foregoing reasons, upon careful and *de novo* review, the decision of the Court of Common Pleas is **REVERSED.**

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge

15