# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SHAWN M. GARVIN,  
SECRETARY OF THE  
DELAWARE DEPARTMENT OF  
NATURAL RESOURCES &  
ENVIRONMENTAL CONTROL,  

    Plaintiff,  

    v.  

JOSEPH W. BOOTH,  
MARGARET A. BOOTH, and  
THORO-KLEEN, INC.,  
    Defendants.  

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

S18M-10-040 JJC  
In and for Sussex County

Submitted: June 28, 2019  
Decided:  July 10, 2019

## MEMORANDUM OPINION AND ORDER
***Plaintiff's Motion for Summary Judgment:***  
***GRANTED in part, DENIED in part***  
***Plaintiff's Motion for Protective Order and Stay of Discovery:***  
***GRANTED in part, DENIED in part***

Robert F. Phillips, Deputy Attorney General, Department of Justice, New Castle, Delaware, *Attorney for the Plaintiff.*

Christopher M. Coggins, Esquire, Coggins Law, LLC, Wilmington, Delaware, *Attorney for the Defendants.*

Clark, J.

Plaintiff is the Secretary of the Department of Natural Resources and Environmental Control ("DNREC"). He moves for summary judgment against Defendants Joseph and Margaret Booth (collectively the "Booths"). This suit implicates the relationship between Delaware's environmental administrative process and DNREC's authority to sue allegedly responsible parties in the Superior Court. In this case, DNREC's Secretary (the "Secretary") issued an order (the "Order") finding the Booths liable for the release of hazardous substances at their Georgetown dry cleaning site (the "Site"). The Booths timely appealed the Order to the Environmental Appeals Board (the "EAB"). The Booths, however, abruptly withdrew their appeal immediately before the scheduled hearing.

DNREC now sues (1) for damages available under Delaware's Hazardous Substances Cleanup Act ("HSCA"),[1] and (2) for all expenses, including cleanup costs, recoverable pursuant to 7 *Del. C.* § 6005(c). Here, the Booths did not contest the Secretary's Order finding them liable for releases at the Site. As a result, the statutory appeal provisions in DNREC's enabling statute and the doctrine of issue preclusion make the Secretary's findings and conclusions binding in this Superior Court action. Partial summary judgment as to the Booth's liability is therefore granted. The amount of damages due DNREC, however, remains a factual issue. For that reason, DNREC's motion for summary judgment is also denied, in part.

Furthermore, this decision separately resolves a pending discovery dispute between the parties. Here, the parties disputed what was discoverable to such a large degree that the Court granted DNREC's motion for a protective order staying further discovery until it issued this decision. Because DNREC's motion is denied, in part, the stay is lifted. The breadth of discovery sought by the Booths, however, was too broad because (1) the Booths' liability for releases at the Site has been fixed, and (2) DNREC now concedes that it does not seek statutory civil penalties. Accordingly,

---

[1] 7 *Del. C.* § 9101.

2

the parties may pursue discovery relevant to the amount of HSCA provided damages resulting from the Booths' refusal to comply with the Secretary's Order. The Court's existing protective order is therefore modified to accommodate the proper scope of this lawsuit.

## FACTS OF RECORD AND PROCEDURAL BACKGROUND

The facts relied upon by the Court are those of record, viewed in the light most favorable to the Booths. Mr. Booth worked for Thoro-Kleen, Inc., who operated a dry cleaning business at the Site prior to September 2, 1986. Prior to then, Mr. Booth's father owned the Site. After the Booths acquired title to the Site in September 1986, and assumed control of Thoro-Kleen,[2] they continued to operate the dry cleaning business until late 2010. They retained ownership of the land after Thoro-Kleen ceased operation.

In 2014, DNREC sent the Booths a notice of liability alleging there were perchloroethylene ("PCE"), trichloroethylene ("TCE"), dichloroethylene (DCE), and vinyl chloride releases at the Site. HSCA defines PCE and TCE as hazardous substances. After DNREC issued this notice of liability, DNREC and the Booths corresponded regularly over the next several years regarding the Booths' potential participation in DNREC's Voluntary Cleanup Program. When negotiations failed, the Secretary issued an October 31, 2017, Order pursuant to 7 *Del. C.* § 9109. In it, he made certain findings of fact, and required the Booths to initiate corrective actions.

---

[2] The Court granted DNREC's motion for default judgment as to liability against Thoro-Kleen. The amount of damages due DNREC from Thoro-Kleen, will be fixed after trial.

Relevant portions of the Order include the following:

### FINDINGS OF FACT AND VIOLATION

. . .

Mr. and Mrs. Joseph Booth are not innocent landowners pursuant to § 9105(c)(2)b. because prior to their purchase of the property where Thoro-Kleen is located they knew of the potential presence of PCE and TCE at the Site yet failed to conduct an appropriate inquiry . . . [O]nce they became owners and operators of the property and the business they became liable for any and all releases of hazardous substances at or from the Site.

. . .

### CONCLUSIONS

Based on the foregoing, . . . Respondents are potentially responsible parties and . . . they have violated HSCA and the Regulations.

The Order then directed the Booths to: (1) identify a consultant to perform a remedial investigation of the facility within sixty days; (2) submit a draft work plan within forty-five days thereafter; (3) submit a completed remedial investigation and feasibility study within one year from the date of the Order; (4) pay outstanding response costs incurred to date by DNREC and agree to pay any reasonably incurred response costs incurred in the future; (4) implement a final plan of remedial action upon issuance; and (5) notify DNREC within seven days regarding circumstances preventing them from meeting the Order's deadlines. The Booths complied with none of the deadlines.

They did, however, timely appeal the Order to the EAB. Throughout their pre-Order correspondence with DNREC, they claimed they were innocent landowners.[3] At the Booths' request, the EAB scheduled a hearing on November

---

[3] *See* 7 *Del. C.* § 9105(c) (providing certain instances when a person will not be held liable for the release of hazardous substances on their premises, including where "[a]ny person who is an operator, past operator, owner, or past owner of a facility and who can establish that at the time the facility was acquired or operated by the person, the person had no knowledge or reason to know of any release or imminent threat of release").

4

27, 2018, to address the Booths' alleged liability and their defenses. The Booths appeared at the hearing, but then abruptly withdrew their request for a hearing with little explanation. The Booths believed that DNREC and the EAB were so structurally intertwined that the EAB could not fairly adjudicate the matter.

Prior to the hearing date, DNREC had filed a Superior Court suit seeking remedial costs and civil penalties from the Booths. Specifically, the suit sought damages provided for in two separate chapters in Title 7. First, DNREC sought damages pursuant to HSCA (Chapter 91). HSCA provides that the Secretary may sue any potentially responsible party in Superior Court for (1) remedial costs incurred by the Secretary, or (2) for a party's refusal to comply, without sufficient cause, with an order issued pursuant to subsections (a) or (b) of Section 9109 of HSCA.[4] DNREC also sought civil penalties under this HSCA provision of up to $10,000 per day for the Booths' refusal to comply with the Secretary's Order. Second, DNREC sought damages pursuant to Section 6005 of Title 7 for abatement of the violations, cleanup costs, and other expenses.[5]

DNREC then moved for summary judgment while simultaneously seeking to stay discovery pending the Court's summary judgment decision. Prior to the oral argument on those two motions, the Booths pressed extremely broad discovery. The discovery seemed in large part targeted at the Booths' underlying liability, notwithstanding their decision not to prosecute an appeal of the Secretary's Order. As a result, DNREC moved for a protective order. The Court granted a protective order staying discovery pending its decision on this motion. When doing so, the Court recognized that the parties' positions regarding the scope of what claims and defenses were relevant to this case were irreconcilable short of a Court decision.

---

[4] 7 *Del. C.* § 9109(e).
[5] 7 *Del. C.* § 6005(c)(1).

## STANDARD OF REVIEW

Summary judgment is appropriate only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[6]  The Court must view the evidence in the light most favorable to the non-moving party.[7]  The burden of proof is initially on the moving party.[8]  However, if the movant meets his or her initial burden, then the burden shifts to the non-moving party to demonstrate the existence of material issues of fact.[9]  The non-movant's evidence of material facts in dispute must be sufficient to withstand a motion for judgment as a matter of law and sufficient to support the verdict of a reasonable fact finder.[10]

## THE BOOTHS ARE PRECLUDED FROM CHALLENGING THE SECRETARY'S FINDINGS THAT THEY VIOLATED HSCA.

DNREC argues that its motion for summary judgment should be granted because the Booths withdrew their EAB appeal.  DNREC's structured its motion to seek full summary judgment.  In the alternative to full summary judgment, DNREC seeks partial summary judgment as to liability because the Booths failed to exhaust their administrative remedies.

The Booths oppose the motion.  They allege that DNREC's motion should not be granted because DNREC's complaint does not properly plead the elements of a claim under 7 *Del. C.* § 9109(e).  They also argue that DNREC cannot recover remedial costs under 7 *Del. C.* § 6005(c) because the Secretary did not first submit a detailed billing to them itemizing the costs he alleges they owe.

At the outset, there is no dispute on the record that the Secretary found the Booths liable for HSCA violations.  When doing so, the Secretary made factual

---

[6] Super. Ct. Civ. R. 56(c); *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).
[7] *Brozaka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[8] Super. Ct. Civ. R. 56(e); *Moore*, 405 A.2d at 680.
[9] *Moore*, 405 A.2d at 681 (citing *Hurtt v. Goleburn*, 330 A.2d 134 (Del. 1974)).
[10] *Lum v. Anderson*, 2004 WL 772074, at *2 (Del. Super. Mar. 10, 2004).

findings and did so with reasonable particularity. The General Assembly created a full and adequate process enabling the Booths to challenge the Order before the EAB. They should have adjudicated the substantive issues in that forum; they have now forfeited their ability to challenge many of those findings.

The EAB is a "quasi-judicial review board which is constituted in order to hear appeals of decisions of the Secretary."[11] Chapter 60 of Title 7 establishes the process for appealing such decisions.[12] This process provided the Booths the opportunity for an evidentiary hearing, conducted in accordance with Delaware's Administrative Procedure Act (the "APA").[13] Tellingly, Superior Court review of decisions such as the one at hand is available only when a person is "aggrieved by any decision of the Board."[14]

Chapter 60 of Title 7 does not expressly provide that aggrieved parties, such as the Booths, must exclusively pursue this administrative process when challenging a Secretary's order. Nevertheless, the General Assembly demonstrated its intent that this process be a respondent's sole recourse by creating such a pervasive administrative process. The comprehensive nature of this overall process, coupled with the inclusion of the EAB's portion of the process within the APA, demonstrate the General Assembly's intent.

With regard to the EAB's enabling statute, "[a]ny person whose interest is substantially affected by any action of the Secretary" is provided an appeal right to the EAB.[15] The statute further provides that after a party appeals an order to the EAB, the matter may proceed directly to the Superior Court *only* upon stipulation of

---

[11] 7 *Del. C.* § 6007(b).
[12] 7 *Del. C.* § 6008(a).
[13] *See* 29 *Del. C.* § 10161(a)(9) (including the EAB within the APA's provisions applicable to case decisions as contrasted with DNREC, where the Secretary's orders and decisions are not subject to that Subchapter of the APA).
[14] 7 *Del. C.* 6009(a).
[15] *See* 7 *Del. C.* §§ 6008-6009 (outlining the appeals process a person should follow when aggrieved by the actions of the Secretary, first to the EAB and then to the Superior Court).

the parties.[16]   DNREC's enabling statutes' structure permits only DNREC to elect separate remedies such as seeking an injunction in the Court of Chancery or filing a civil action in Superior Court for damages.  On the other hand, with only one limited exception, DNREC's enabling statutes provide no corresponding election of remedies for an aggrieved party permitting him or her to bypass the administrative process.  This limited exception is located in the statutory provision providing for cease and desist orders and implies that an aggrieved party may sue separately only to enjoin a cease and desist order.[17]  Finally, the APA, to which the EAB is subject, further demonstrates the exclusiveness of the administrative process in these matters.  Namely, the APA provides that (1) only final decisions of an agency may be appealed and (2) appeals *shall* be limited in scope to a review of the record below.[18]

Given this statutory framework, the Booths must have first exhausted their administrative remedies as a prerequisite to challenging the Order's findings.  Where a remedy is available through means of an administrative hearing, a plaintiff "cannot come immediately to this court, rather they must [first] establish a record below."[19]  Moreover, a person may not "simply decide to bypass" the administrative process.[20]  Given the General Assembly's clear intent that an aggrieved party must first avail himself or herself of this administrative process, the Booths decision to withdraw their appeal does not provide them a route around the administrative process.

In a pure sense, the doctrine of exhaustion of administrative remedies is not directly at issue in this case.  Namely, this is not a situation where *the Booths seek* to invalidate the Order by directly bypassing the administrative process.  Rather, this

---

[16] 7 *Del. C.* § 6008 (e).
[17] *See* 7 *Del. C.* § 6018 ( recognizing that when the Secretary issues an order to cease and desist pursuant to that section it would be subject to a suspension by an injunction ).
[18] *See* 29 *Del. C.* § 10142 (providing that "the Court's review, in the absence of actual fraud, shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency." (emphasis added)).
[19] *Buckson v. Ropp*, 2000 WL 1741935, at *3 (Del. Super. Nov. 21, 2000).
[20] *Carter v. Dept. of Labor*, 1993 WL 489222, at *2 (Del. Super. Nov. 12, 1993).

8

is a DNREC initiated civil suit, where DNREC seeks to apply issue preclusion against the Booths, offensively. The policies behind these doctrines intertwine significantly but are distinct in application. Nevertheless, the overlapping rationales for these two doctrines both support application of issue preclusion against the Booths. Given the Booths' litigation choices, they have forfeited their right to now challenge their liability when they had a full and fair opportunity to do so below. Issue preclusion estops them from now contesting the Secretary's factual findings in the Order.

The well-recognized justifications for issue preclusion in the context of court decided issues applies equally in this administrative law context. As the United States Supreme Court noted in *Astoria Federal Savings & Loan v. Solimino*, such preclusive effect of an administrative decision

> is [also] justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.[21]

Furthermore, the Delaware Supreme Court recognized in its decision in *Messick v. Star Enterprise*, that issue preclusion applies "not only to issues decided by courts, but also to issues decided by administrative agencies acting in a judicial capacity where the parties had an opportunity to litigate."[22] In the context of an Industrial Accident Board matter, the Court in *Messick* applied the same test for collateral estoppel [issue preclusion] applied in other contexts. Namely,

> [t]he test for applying [issue preclusion] requires that (1) a question of fact essential to the judgment, (2) be litigated and (3) determined (4) by a valid and final judgment.[23]

---

[21] 501 U.S. 104, 107 (1991).
[22] 655 A.2d 1209, 1211 (Del. 1995).
[23] Id. (citations omitted).

9

Here, the Order provides that its purpose is to "definitively address the issues of [the Booths'] liability under HSCA." It also includes the Secretary's finding that the Booths were not innocent landowners. Finally, the Order concludes that the Booths are liable for "all releases of hazardous substances at or from the Site in accordance with 7 *Del. C.* § 9105(a)(1)."

Those findings apply collaterally to the instant suit when viewed through the test articulated in the *Messick* decision. First, the factual findings regarding hazardous substance releases are essential to the underlying Order. Second, although the Booths did not actually litigate the matter before the EAB, they had a full and fair opportunity to do so. Such an opportunity to fully litigate the matter and be heard satisfies the "litigated" element for preclusion.[24] Regarding the third and fourth elements combined, the Order constituted a determined valid and final judgment. The Secretary's Order made certain findings that became valid and final when the Booths withdrew their appeal. For these reasons, the Booths are precluded from challenging the Secretary's findings in this suit, as a matter of law.

## SUMMARY JUDGMENT REGARDING THE ISSUE OF DAMAGES IS INAPPROPRIATE.

DNREC seeks the following in their complaint:

- Damages pursuant to 7 *Del. C.* § 9109 (e) and (h) for three times the costs incurred because they refused to comply with the Order, and civil penalties of up to $10,000 per day;
- DNREC's costs as provided for by *7 Del. C.* § 6005(c); and
- Any pre and post-judgment interest, court costs, and other relief as the Court deems just and proper.

---

[24] *See* Epstein v. Chatham Park, Inc. 153 A.2d 180, 184 (Del. Super. 1959) (recognizing that the "doctrine of res judicata "rests upon the reasonable premise that a party who has once litigated, *or has had the opportunity to litigate,* the same matter before a court of competent jurisdiction, must thereafter hold his peace." (emphasis added)).

In the complaint, DNREC did not allege damages specially. In fact, to date in discovery, DNREC has not identified any evidence of record substantiating what remedial costs it seeks. Accordingly, it has not met its initial burden of demonstrating that there are no genuine issues of material fact regarding damages. For the first time, at oral argument, DNREC claimed that its recoverable remedial costs incurred to date are approximately $260,000. DNREC further represented that none relate to the actual clean-up of the Site. Rather, they are primarily study and planning related costs. Regardless, absent identified evidence of record, summary judgment against the Booths on the issue of damages is not justified. The burden to prove these damages rests upon DNREC at trial. The trier of fact will determine the amount of damages due, if any.

## THE STAY OF DISCOVERY IS LIFTED, IN PART; DISCOVERY SHALL BE LIMITED TO MATTERS RELEVANT TO THOSE DAMAGES AVAILABLE PURSUANT TO 7 *DEL. C.* § 9109(E) AND (H)(1).

The Booths served extensive discovery upon DNREC seeking information relating to all aspects of this HSCA case. Much of it was not relevant to any party's claim or defense for two reasons. First, as discussed previously, liability is not at issue. A significant amount of the Booths requested discovery focused on liability related issues. Second, portions of DNREC's damages claim will not be available at trial.[25] DNREC will be bound by its representations at oral argument regarding the nature of damages it seeks. As a result, a more limited scope of potential

---

[25] DNREC voluntarily withdrew its claim for civil penalties against the Booths at oral argument. Such a concession has a meaningful impact upon the scope of discovery. Civil penalties are in essence statutorily provided punitive damages, assessed for purposes of punishment. As in the case of a claim for punitive damages, a trier of fact would need to evaluate the willfulness of the violator's conduct in order to assess a penalty range from between $0 and $10,000 per day. Since DNREC has withdrawn this claim, broader discovery regarding liability related issues is not appropriate on the basis that DNREC seeks civil penalties.

11

damages in turn limits the scope of discovery. The protective order will be modified accordingly.

The argument surrounding the motion for a protective order focused primarily on what damages DNREC alleges are due. At the outset, on the current record, DNREC has no claim for damages pursuant to 7 *Del. C.* § 6005.[26] Section 6005(c)(1) provides that DNREC may seek broad reaching cost recovery to include the full cost of abatement, cleanup, and remediation. As a corollary to the doctrine of exhaustion of administrative remedies, agencies are similarly limited by the strictures of their enabling statutes.[27] Section 6005(c) requires a Secretary seeking damages under that subsection to submit a detailed billing of expenses to the "liable person."[28] The liable person may then challenge the amount's accuracy by requesting a hearing with the Secretary.[29] After a decision by the Secretary, the liable person may then appeal the Secretary's decision directly to the Superior Court.[30] The Secretary has not submitted such a billing to the Booths.

Admittedly, Section 6005(c)(1) provides the Secretary the discretion to bypass an administrative hearing and sue for the itemized expenses in Superior Court. Namely, that paragraph provides that "[i]n lieu of holding an administrative hearing on the detailed billing, . . . the Secretary may [initiate] a civil action in any court of competent jurisdiction within the State of Delaware."[31] Nevertheless, while this provision permits the Secretary to bypass an administrative hearing, it does not permit him to bypass his obligation to provide a detailed billing of expenses as a

---

[26] *See* 7 *Del. C.* § 6005(c)(1) (providing that a person violating Chapter 60, rules or regulations issued by DNREC, or an order of the Secretary, shall be liable for abatement costs, cleanup costs, pollution control costs, and other costs incurred by the DNREC).
[27] *See Delaware State Sportsmen's Ass'n v. Garvin*, 196 A.3d 1254, 1268 (Del. Super 2018) (explaining that agencies "may only act within the confines of the legislative acts creating them").
[28] 7 *Del. C.* § 6005(c)(1).
[29] 7 *Del. C.* § (c)(2).
[30] *Id.*
[31] *Id.*

prerequisite to collecting those expenses. Rather, that paragraph creates a statutory notice requirement imposed at the administrative level of the process regardless of the Secretary's election of remedy. [32] It provides that the Secretary can proceed directly to suit under that paragraph only *after* first providing a detailed billing of claimed expenses. Accordingly, because DNREC did not satisfy this condition, it may recover no damages in the instant suit under that paragraph. It further follows that discovery independently targeted at the expenses referenced in Section 6005(c)(1) will not be appropriate.

DNREC's claim for damages under HSCA, however, remains in the case. Under HSCA,

> [t]he Secretary may bring an action in Superior Court against any potentially responsible party to collect remedial costs incurred by the Secretary, or for a party's refusal to comply, without sufficient cause, with an order issued under subsection (a) or (b) of this section. [33]

Subsection (h) of that same section provides for up to three times the amount of remedial costs incurred by the State as a result of the person's refusal to comply. [34]

Although HSCA does not expressly define "remedial costs," the definitions of "remedial action" and "remedy" elsewhere in Chapter 91 of Title 7 demonstrate the General Assembly's intention that such costs approach the expenses recoverable under Section 6005, including public funds spent to fully remediate a site. [35] Here, however, DNREC represents that it does not seek cleanup costs or other forward-looking costs. In fact, at oral argument, DNREC clarified that it has not incurred cleanup costs at the Site, to date. Rather, DNREC limits its claim in the present suit

---

[32] *See id.* (where the statute provides that the Secretary may file suit only to compel payment of amounts "listed in the detailed billing." It therefore follows that a billing must *precede* any such suit).

[33] 7 *Del. C.* 9109(e).

[34] 7 *Del. C.* 9109(h).

[35] *See* 7 *Del. C.* 9103(26)-(27) (defining "remedial action" as actions to clean-up or prevent harm to the environment, and "remedy" as an action that eliminates an imminent threat to the environment).

to study and investigation related costs already incurred. This focus tracks the remedies sought in the Order that focused on study and planning related costs (with one exception seeking to require the Booths to "agree to pay" future cleanup costs). Given DNREC's self-limitation of its claim, discovery is appropriate only regarding matters relevant to the damages DNREC claims the Booths have caused to date by refusing to comply with the Order.[36] Given timing provisions in the discovery rules, and the recent amendment to Superior Court Civil Rule 26 that will be effective on August 1, 2019, the parties "may obtain discovery regarding any non-privileged matter that is relevant to [these damage issues that is also] proportional to the needs of this case."[37]

## CONCLUSION

For the reasons explained above, DNREC's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part. The stay of discovery is lifted and the protective order is **MODIFIED**, consistent with the Court's decision setting forth the issues to be decided by the trier of fact.

**IT IS SO ORDERED**

/s/Jeffrey J Clark
Judge

JJC:jb
*Via File & Serve Xpress*

---

[36] 7 *Del. C.* § 9109(e).
[37] Super. Ct. Civ. R. 26 (as amended June 27, 2019).